

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-12-00026-CR**

**CRISPIN MANUEL SHELDON,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 52nd District Court**
**Coryell County, Texas**
**Trial Court No. FAM-10-20572**

**MEMORANDUM OPINION**

In five issues, appellant, Crispin Manuel Sheldon, challenges his conviction for aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (West 2011). We affirm.

### I. BACKGROUND

In this case, appellant was charged by indictment with aggravated assault with a deadly weapon, stemming from an altercation that occurred at a McDonald's in Copperas Cove, Texas, on or about September 25, 2010. Specifically, the indictment

alleged that appellant intentionally or knowingly threatened Manfred Joseph Zimmer with imminent bodily injury by cocking a gun, pointing the gun at Zimmer, and threatening to kill Zimmer. The facts surrounding the incident were hotly contested at trial.

## A.    The State's Evidence

Zimmer, an employee at the Copperas Cove post office, testified that he usually likes to stop by McDonald's in Copperas Cove on Saturday mornings before he goes to work at 6:00 a.m. Zimmer recalled that, on the day in question, he went to McDonald's, purchased a sausage biscuit and hash brown, and picked up a newspaper. Zimmer wanted to get the *Bulldawg Express*, which apparently is a free newspaper that documents the Copperas Cove High School football team. Recognizing that the *Bulldawg Express* was not available, Zimmer picked up a *Sentinel* newspaper that was on the counter and walked outside to his truck. Zimmer testified that he believed the *Sentinel* newspaper to be free because there was no sign stating that the newspapers could not "be taken out of the store."

After getting into his truck and backing out, Zimmer noticed that appellant had left the McDonald's and was advancing towards him. Zimmer noted that appellant was waving and yelling. At the time, Zimmer had his window rolled up. He later rolled his window down to speak with appellant. Zimmer alleged that after he rolled his window down, appellant started cursing and asking where he "was going with the newspaper." Zimmer responded that it was none of appellant's business. Apparently unhappy with Zimmer's response, appellant allegedly hit Zimmer "three or four times through my

window in my left face here." Zimmer stated that he could not defend himself because he was restrained by his seat belt. Appellant then pointed a .45-caliber pistol at Zimmer, slid the lock back, chambered a round, and told Zimmer that he was "going to kill you son of a bitch." At that point, Zimmer located his cell phone and called 911. After observing Zimmer call 911, appellant re-holstered his gun and walked back inside the McDonald's.

As a result of the altercation, Zimmer sustained cuts, bruises, and a significant eye injury. Zimmer testified that he feared appellant was going to kill him. In addition, Zimmer acknowledged that appellant asked him whether he was too cheap to purchase the newspaper, to which Zimmer replied, "Yes." Zimmer denied threatening to run over appellant if he did not get out of the way.

Shortly thereafter, the police arrived at the scene. Corporal Gabriel Cardona of the Copperas Cove Police Department was among the officers who responded to the scene. Corporal Cardona noted that he arrived at the McDonald's at 5:46 a.m. and noticed Zimmer's red pickup truck "stopped in the parking lot just short of the entrance on the west side." After stopping his vehicle, Corporal Cardona entered the McDonald's with his service weapon drawn. Once he and other officers located appellant, Corporal Cardona ordered appellant to stand up and show them his hands. Appellant ignored Corporal Cardona's instructions. Corporal Cardona repeated the instructions multiple times, and appellant refused to cooperate. Corporal Cardona continued to advance toward appellant until he was able to grab appellant's arm and get him to stand up so that he could be secured in handcuffs.

After placing appellant in handcuffs, appellant informed officers that he had a permit to carry a gun. Officers found appellant's black Astra model A-100 .45-caliber pistol concealed inside a waistband holster. Corporal Cardona seized the gun and ejected the magazine. He found eight rounds in the magazine, but he did not find any rounds contained in the chamber of the gun. Officers also found a blackjack on appellant's person.[1]

Subsequently, appellant told Corporal Cardona that he had confronted Zimmer in the parking lot because Zimmer had stolen a newspaper. Appellant then alleged that Zimmer tried to run him over with his truck. Appellant did not assert that Zimmer tried to "run over [appellant's] toes, his feet[,] or any part of his body." Moreover, appellant did not claim that he was struck by the mirror of Zimmer's truck.

Felis Reyna, a patrol officer with the Copperas Cove Police Department, also spoke with appellant about the incident. Officer Reyna stated that appellant was cooperative and gave voluntary statements. With regard to Zimmer's injuries, appellant told Officer Reyna that they were self-inflicted. According to Officer Reyna, appellant "said he never struck [Zimmer] and nor did he ever pull a weapon out on him." When Corporal Cardona asked how Zimmer knew that appellant was carrying a gun, appellant said "that it may have been revealed when he lifted his arms up." Appellant also told police that Zimmer tried to run him over first. Officer Reyna then informed appellant that they were seeking surveillance video from security cameras at

---

[1] According to Corporal Cardona, a blackjack is an extendable baton that is unlawful for a person to carry.

McDonald's. Officer Reyna noticed that appellant's demeanor changed when presented with this information. According to Officer Reyna, appellant became tense and "postured up on me." Officer Reyna later noted that appellant was "more direct, kind of in your face type attitude" when finding out about the surveillance video.[2] Officer Reyna told appellant that he did not believe that appellant was "being completely honest about the entire incident." Appellant responded that he will "worry about that when the time comes." Shortly thereafter, appellant declined to speak further with police.

Officers later discovered that when appellant returned to the McDonald's after the altercation with Zimmer, appellant went directly to the restroom. Appellant admitted at trial that he had chambered a round in the pistol and that he went to the restroom to unload the pistol "[b]ecause of the danger with weapons."

Officers also spoke with Zimmer about the altercation. Several witnesses recounted that Zimmer appeared to be in shock about the incident. Corporal Cardona noted that Zimmer "had an abrasion on the left side of his lip, on the upper lip and another abrasion on the back of his right hand." According to Corporal Cardona, Zimmer's abrasions appeared to be fresh. Officers also spoke with McDonald's employees, who indicated that they wanted the newspaper back. The newspaper was eventually returned. No one from McDonald's ever contacted the Copperas Cove Police Department to press charges against Zimmer.

---

[2] Jason Schaefer, a patrol officer with the Copperas Cove Police Department, indicated that appellant had an agitated demeanor when speaking with police about the incident.

Dr. Janine Aman, a therapeutic optometrist, testified about the injury Zimmer sustained to his eye. According to Dr. Aman, some of the vitreous strands attached to the retina of Zimmer's left eye became detached due to being struck in the head several times. As a result, the strands floated around Zimmer's eye and blocked his vision. Dr. Aman noted that this impairment will never go away, but it is possible that the strands will float down to the bottom of Zimmer's eye and no longer impair his vision.

Jennifer Donnelly, a manager in training at the McDonald's, testified that she was working the day of the incident. In her testimony, Donnelly recounted that appellant was a regular and that when he noticed Zimmer take the newspaper, he told Donnelly "that's not right. You're not supposed to be stealing from here. That's property of McDonald's." Donnelly denied asking appellant to go outside to retrieve the newspaper. She also denied seeing much of the altercation, but she did think that Zimmer's truck may have "lunged forward a little bit" while appellant was near the window of Zimmer's truck. Donnelly also stated that she overheard appellant when he returned and proceeded to the restroom. She recalled appellant stating, "mother fucker stealing from the store ain't right and people shouldn't be stealing things." Donnelly thought appellant "looked a little agitated."

Keith Casab Sr., an area supervisor for all of the McDonald's in the Killeen/Copperas Cove area, testified that he has observed people take a copy of the *Killeen Daily Herald* or the *Temple Daily Telegram* and walk out with it. In fact, Casab noted that it happens on a daily basis and that he had never called the police or filed charges for taking a newspaper. He also stated that he has never asked anyone to

watch over newspapers at the restaurant. McDonald's employees also testified that the newspapers are thrown away at the end of the day.

**B.      Appellant's Evidence**

Appellant testified on his own behalf. At the time of trial, appellant was sixty-five years old. Appellant noted that he served in the army for twenty-four years, which included a tour in Vietnam. In addition, appellant worked several years as a corrections officer at several Texas prisons. In any event, appellant acknowledged that he receives disability from the military because he has been diagnosed with post-traumatic-stress disorder.

In response to subsequent questioning, appellant stated that he frequently goes to McDonald's in Copperas Cove. Appellant recalled that on the day in question, he "saw the gentleman come in there and buy something out of . . . the McDonald's. And then he walked around and got a newspaper, stuck it under his arm and then he went and got a drink, you know, and then he went outside."[3] Upon seeing this, appellant,

> Went outside and I went to confront the individual. And at the time when I went outside, he was close to his vehicle, and I asked him, are you that cheap that you have to steal a 50 cent newspaper. That's what I asked the gentleman outside. And he said, yes.
>
>           . . . .
>
>           Well, you know, I was on the road there and, you know, he pulled out of the drive—out of the parking lot and was coming my way and I was still on the road. And before that, he told me, if you don't get the F out of the way, I'm going to run you over.

---

[3] During cross-examination, appellant contended that the newspaper was inside plastic; however, McDonald's employees refuted this contention by stating that they had already taken the newspaper out of the plastic and placed it on the counter when Zimmer took it.

. . . .

Well, I was still in the road there.  He ran over with the tire of his vehicle the tip of my shoes.  And that really got me agitated when he ran over my shoes, the tip of my shoes.  And I told him, you need to turn that vehicle off.  He refused.  I stick [sic] my hand in there trying to turn the vehicle off.  He pushed me or hit me.  I can't remember.  But then I turned right around and I hit him twice with my open hand.

Appellant alleged that Zimmer responded by hitting him in the chest, knocking his glasses to the ground.  Appellant then testified that:

I reached over and got the glasses, put them in my pocket, inside my shirt pocket.  I took out my .45.  I chambered a round.  I asked him, are you going to run me over now because he had stated before he was going to run me over.  So when he started yelling oh, my [G]od, he has a gun, I'm going to call 9-1-1, I holstered my pistol.  I put it in my holster again, and I went inside.  I knew the person was no threat to me.  I went inside and waited for the police to come because he said he was going to call 9-1-1.

Appellant stated that he could not remember telling officers that Zimmer's injuries were self-inflicted, but he did admit at trial that he had hit Zimmer during the altercation.

Later, appellant asserted that he had the right to reclaim the newspaper on the behalf of McDonald's.  In particular, appellant noted the following:

[Appellant]:        As a citizen of the United States[,] I have the right to protect anybody's property, sir.

Q:                      You know this how?

[Appellant]:        The Constitution of the United States gives me that right, sir.

Q:                      Constitution of the United States gives you the right to protect—

[Appellant]:        Yes, sir.

Q:                      —property?

[Appellant]:        And the Bill of Rights too.

                    . . . .

[Appellant]:        I served in the armed forces of the United States for 24 years to protect the Constitution, sir.

Q:                  What part of the Constitution gives you the right to protect the McDonald's property?

[Appellant]:        I'm not a legal scholar of the Constitution, sir.  I respect the Constitution.  That's all I'm going to say.

Appellant also acknowledged that he and Zimmer were in the road when Zimmer allegedly ran over the tips of appellant's shoes.  Nevertheless, appellant denied initiating any physical contact with Zimmer, though he admitted initiating verbal contact.  Appellant also admitted that he did not tell police at the scene of the incident that Zimmer had run over the tips of his shoes.  Thereafter, when pressed for additional details about the incident, appellant stated:  "When you get to my age, sir, you forget a lot of things."  When asked why he pulled a gun on Zimmer, appellant responded:  "I pulled a weapon to show that I had deadly force[,] and I was prepared to use it."  Appellant denied doing anything wrong and blamed the entire incident on Zimmer.

At the conclusion of the evidence, the jury found appellant guilty of the charged offense.  In addition, the jury also determined that appellant used a deadly weapon, a firearm, in the commission of this offense.  With regard to punishment, the jury recommended a five-year sentence for appellant with an $8,000 fine to be probated.  The trial court accepted the jury's five-year sentence and $8,000 fine, suspended the

sentence, and placed appellant on probation for a period of eight years.[4]  This appeal followed.

## II.  PURPORTED JURY-CHARGE ERROR

In his fourth and fifth issues, appellant complains about the jury charge.  In particular, appellant argues that he suffered egregious harm as a result of the trial court submitting a "provoking the difficulty" charge in conjunction with instruction on self-defense and the protection of a third-person's property.

## A.  Standard of Review

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge.  *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).  If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003).  If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.*  To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm.  *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

---

[4] Among the conditions of appellant's probation are a prohibition from possessing or owning a firearm, illegal knife, club, or other prohibited weapons and a requirement that appellant enroll in an anger-management program.

Appellant admits that he did not object to the jury charge; thus he must show egregious harm. *See Almanza*, 686 S.W.2d at 171. In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

## B.     Applicable Law

Generally, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (West 2011). The doctrine of provocation, also known as "provoking the difficulty," is a limitation on the right of self-defense. *See Smith v. State*, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998). "If not called for by the facts, a charge on provoking the difficulty constitutes an unwarranted limitation on the right of self-defense." *Reeves v. State*, No. PD-1711-12, 2013 Tex. Crim. App. LEXIS 1317, at *17 (Tex. Crim. App. Sept. 18, 2013) (citing *Tave v. State*, 620 S.W.2d 604, 605 (Tex. Crim. App. 1981)). The use of force is not justified if the actor "provoked the other's use or attempted use of unlawful force," unless (1) the actor abandons the encounter "or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter,"

and (2) the other person "nevertheless continues or attempts to use unlawful force against the actor."  TEX. PENAL CODE ANN. § 9.31(b).

The doctrine of provocation requires an element of intent that is not explicit in the penal code.  *See Mendoza v. State*, 349 S.W.3d 273, 279 (Tex. App.—Dallas 2011, pet. ref'd).

> A charge on provocation is required when there is sufficient evidence (1) that the defendant did some act or used some words which provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other.

*Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998).  A provocation instruction should be submitted to the jury only "when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt."  *Id.* at 514.  "A defendant may have a desire that the victim will attack him, or he may seek the victim with the intent to provoke a difficulty, but the defendant must go further and do or say something which actually provokes the attack before he will lose his right to self-defense."  *Id.*  The elements of provocation are fact questions for the jury.  *Id.* at 514-18; *Thomas v. State*, 750 S.W.2d 324, 325 (Tex. App.—Dallas 1988, pet. ref'd).  On appeal, our inquiry is whether, in the light most favorable to giving the instruction, there was sufficient evidence with which a jury could have found provocation beyond a reasonable doubt.  *Smith*, 956 S.W.2d at 514; *Thomas*, 750 S.W.2d at 325.

C.      **Discussion**

Here, the jury charge contained instructions for both self-defense and protection of a third person's property. The jury charge also provided the following "provoking the difficulty" instruction:

> You are further instructed as part of the law of this case, and as qualification on the law of self-defense, that, if you find and believe from the evidence, beyond a reasonable doubt, that the defendant, CRISPIN MANUEL SHELDON, immediately before the difficulty then and there did some act, or used some language, or did both, if any, with the intent to produce the occasion to bring on the difficulty and commit aggravated assault with a deadly weapon against Manfred Joseph Zimmer, and that such conduct on defendant's part, if there was such, was reasonably calculated to, and did, provoke a difficulty, and that on such account the said Manfred Joseph Zimmer attacked defendant, or reasonably appeared to defendant to attack him, or to be about to attack him, and that the defendant then committed aggravated assault with a deadly weapon against Manfred Joseph Zimmer in pursuance of his original design, if you find there was such; or if the defendant provoked the difficulty that resulted in the aggravated assault with a deadly weapon against, Manfred Joseph Zimmer, and by his own wrongful act, if any, produced a necessity for committing aggravated assault with a deadly weapon and you so find beyond a reasonable doubt, you will find against the defendant's claim of self-defense.

It is this instruction that appellant complains about in his fourth and fifth issues. Specifically, appellant argues that the evidence does not support the inclusion of this instruction in regard to his allegations of self-defense and protection of a third person's property. We disagree.

The record reflects that Zimmer took a newspaper from McDonald's, assuming that it was free. Appellant observed this and told Zimmer that he could not take the newspaper as Zimmer left the restaurant. As Zimmer entered his truck, appellant exited the McDonald's waving and yelling. Appellant admitted that he went outside to confront Zimmer about taking the newspaper. At this point, the stories diverge.

Zimmer testified that appellant began hitting him while he sat inside his truck and eventually pointed a gun at him and said "I am going to kill you son of a bitch." As a result of the altercation, Zimmer sustained abrasions, bruises, and a significant eye injury. Appellant asserted that Zimmer was the initial aggressor because he allegedly threatened to run appellant over with his truck. Appellant also asserted that Zimmer hit him when he tried to reach inside to turn off Zimmer's truck. Though he did not tell police, appellant alleged at trial that Zimmer ran over the tips of his shoes with his truck. Appellant stated that he pointed his gun at Zimmer and threatened to use deadly force only after Zimmer ran over the tips of his shoes.

Viewing the evidence in the light most favorable to giving the instruction, a rational jury could find every element of provocation beyond a reasonable doubt. *See Smith*, 965 S.W.2d at 513; *see also Thomas*, 750 S.W.2d at 325. Merely because appellant and Zimmer disagree about what transpired that morning does not mean that the evidence is insufficient to support the inclusion of the "provoking the difficulty" instruction in the jury charge. Accordingly, because the evidence sufficiently supports the instruction, we cannot say that the trial court erred in including the "provoking the difficulty" instruction. *See Smith*, 965 S.W.2d at 513; *see also* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (providing that the trial court shall instruct the jury on the "law applicable to the case").

Furthermore, we believe that any possible error associated with the inclusion of the "provoking the difficulty" instruction in the jury charge was mitigated by the inclusion of the following instruction:

> On the other hand, if you find that the acts done, or language used by defendant, if any, were not under the circumstances reasonably calculated or intended to provoke a difficulty, or an attack by Manfred Joseph Zimmer upon defendant, or if you have a reasonable doubt thereof, then in such event defendant's right of self-defense would in no way be lessened, and in that event you will decide the issue of self-defense in accordance with the law on that subject as stated above.

As is required by law, the language of the jury charge left it to the jury to determine the issues of self-defense, protection of a third person's property, and provocation, and, after weighing the evidence, the jury ultimately rejected appellant's assertions of self-defense and protection of a third person's property and found him guilty of the charged offense. *See Smith*, 965 S.W.2d at 514-18; *see also Thomas*, 750 S.W.2d at 325. As such, we cannot conclude that the "provoking the difficulty" language contained in the jury charge deprived appellant of a valuable right, vitally affected his defensive theories, or affected the very basis of his case. *See Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121. In other words, given the state of the record, we cannot say that appellant was egregiously harmed by the inclusion of the "provoking the difficulty" instruction in the jury charge. *See Smith*, 965 S.W.2d at 514; *see also Olivas*, 202 S.W.3d at 144; *Almanza*, 686 S.W.2d at 171. Accordingly, we overrule appellant's fourth and fifth issues.

### III. SUFFICIENCY OF THE EVIDENCE

In his first three issues, appellant challenges the sufficiency of the evidence. Specifically, in his first issue, appellant argues that the evidence is insufficient to prove the indictment allegation that appellant assaulted Zimmer while cocking a gun. In his second and third issues, appellant contends that the evidence is insufficient to disprove the justifications of self-defense and protection of a third person's property.

**A.      Standard of Review**

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of

Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a
> conviction, a reviewing court must consider all of the evidence in the light
> most favorable to the verdict and determine whether, based on that
> evidence and reasonable inferences therefrom, a rational fact finder could
> have found the essential elements of the crime beyond a reasonable doubt.
> *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560
> (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This
> "familiar standard gives full play to the responsibility of the trier of fact
> fairly to resolve conflicts in the testimony, to weigh the evidence, and to
> draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443
> U.S. at 319. "Each fact need not point directly and independently to the
> guilt of the appellant, as long as the cumulative force of all the
> incriminating circumstances is sufficient to support the conviction."
> *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and

improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if

the record supports conflicting inferences, we must presume that the factfinder resolved

the conflicts in favor of the prosecution and therefore defer to that determination.

*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial

evidence are treated equally: "Circumstantial evidence is as probative as direct

evidence in establishing the guilt of an actor, and circumstantial evidence alone can be

sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that

the factfinder is entitled to judge the credibility of the witnesses and can choose to

believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

Here, the State was required to prove beyond a reasonable doubt that appellant committed assault, as defined in section 22.01 of the Texas Penal Code, and used or exhibited a deadly weapon during the commission of the assault. *See* TEX PENAL CODE ANN. § 22.02(a)(2). Section 22.01(a) provides that a person commits assault if he: (1) intentionally, knowingly, or recklessly caused bodily injury to another; (2) intentionally or knowingly threatened another with imminent bodily injury; or (3) intentionally or knowingly caused physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. *Id.* § 22.01(a) (West Supp. 2013).

## B.    The Indictment Allegations

In his first issue, appellant alleges that the evidence is insufficient to prove that he assaulted Zimmer while cocking a gun. In particular, appellant argues that the State presented no evidence concerning the type, properties, mechanisms, or cocking

functions of the gun seized from appellant and used during the altercation.  According to appellant, "[n]o expert or lay testimony was presented showing the chambering of a round in the gun was the same as or the equivalent of a cocking of the gun.  Absent evidence of cocking a gun, the State failed to prove that which it alleged . . . ."

In the present case, the operative language of the indictment provides as follows:

> Defendant, on or about the 25th day of September, 2010, and before the presentment of this indictment, in the County and State aforesaid, did then and there intentionally or knowingly threaten Manfred Joseph Zimmer, with imminent bodily injury by cocking a gun, pointing it at Manfred Joseph Zimmer and threatening to kill Manfred Joseph Zimmer, and did then and there use or exhibit a deadly weapon, to-wit:  a gun, during the commission of said assault.
>
> And it is further presented in and to said Court that a deadly weapon, to-wit:  a gun, was used or exhibited during the commission of the aforesaid offense or during immediate flight following the commission of the aforesaid offense, and that the defendant used or exhibited said deadly weapon or was a party to the aforesaid offense and knew that a deadly weapon would be used or exhibited.

Based on our reading of the indictment and the evidence presented, we believe the language pertaining to the cocking of the gun to be immaterial.  The Texas Court of Criminal Appeals has stated that "a variance regarding a non-statutory allegation describing the method of the offense of a result-of-conduct offense is immaterial." *Ramos v. State*, No. PD-1917-11, 407 S.W.3d 265, 2013 Tex. Crim. App. LEXIS 952, at *11 (Tex. Crim. App. June 26, 2013).  Moreover, the Court has also stated that aggravated assault "is a result-of-conduct crime with the focus or gravamen being on the victim and the bodily injury that was inflicted."  *Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012).  In this case, appellant was charged under section 22.02 of the Texas

Penal Code, which also references section 22.01. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02. When reviewing those two statutory provisions, we find that the cocking of the gun is not an element of the underlying offense. *See id.* at *10 ("[T]he pleading of unnecessary facts gives rise to an immaterial variance.") (citing *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001)); *see also* TEX. PENAL CODE ANN. §§ 22.01, 22.02. Accordingly, the allegation regarding the cocking of the gun merely amounts to a non-statutory allegation that is immaterial.

And while the cocking of the gun could arguably constitute an assault in this context, we also note that the indictment alleged that appellant pointed the gun at Zimmer. This would also constitute an assault within the context of section 22.01 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. §§ 22.01; *see also Anderson v. State*, 11 S.W.3d 369, 375-76 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("Aiming a deadly weapon at a supposed victim is sufficient evidence of a threat to sustain an aggravated assault conviction.") (citing *Rodriguez v. State*, 955 S.W.2d 171, 174 (Tex. App.—Amarillo 1997, no pet.)).[5] Moreover, the record contains ample testimony, including appellant's own admission, indicating that appellant pointed a gun at Zimmer during the altercation. Therefore, we conclude that the language pertaining to the cocking of the

---

[5] Section 1.07(a)(17)(A) provides that a "[d]eadly weapon" means "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West Supp. 2013). If the State alleges and proves that a weapon falls within this category, "it is not necessary to verify that the object was really capable of causing death." *Adame v. State*, 69 S.W.3d 581, 583 (Tex. Crim. App. 2002) (Meyers, J., concurring) (citing *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991)); *see Wright v. State*, 582 S.W.2d 845, 847 (Tex. Crim. App. 1979); *Grant v. State*, 33 S.W.3d 875, 881 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (noting that there is no requirement that a firearm be loaded to support a deadly-weapon finding).

gun is immaterial. And as such, we reject appellant's sufficiency argument regarding the cocking-of-the-gun language. We overrule appellant's first issue.

## C. Self-Defense and Protection of a Third Person's Property

In his second and third issues, appellant argues that the evidence is insufficient to disprove his justifications of self-defense and protection of a third person's property. We disagree.

The State bears a burden of persuasion, but not a burden of production in disproving evidence of self-defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). That is, the State need not produce evidence rebutting a self-defense claim; it must only prove its case beyond a reasonable doubt. *Id.* In resolving a sufficiency-of-the-evidence issue, we look not to whether the State presented evidence which rebutted a defendant's self-defense testimony, but rather we determine whether viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense, in this case aggravated assault with a deadly weapon, beyond a reasonable doubt and also could have found against appellant on the self-defense issue beyond a reasonable doubt. *See id.* at 914. A jury verdict of guilty is an implicit finding rejecting a defendant's self-defense claim. *Id.*

On the other hand, section 9.43 of the Texas Penal Code provides the following with respect to the protection of a third person's property:

> A person is justified in using force or deadly force against another to protect land or tangible, movable property of a third person if, under the circumstances as he reasonably believes them to be, the actor would be justified under Section 9.41 or 9.42 in using force or deadly force to protect his own land or property and:

(1) the actor reasonably believes the unlawful interference constitutes attempts or consummated theft of or criminal mischief to the tangible, movable property; or

(2) the actor reasonably believes that:

(A) the third person has requested his protection of the land or property;

(B) he has a legal duty to protect the third person's land or property; or

(C) the third person whose land or property he uses force or deadly force to protect is the actor's spouse, parent, or child, resides with the actor, or is under the actor's care.

TEX. PENAL CODE ANN. § 9.43 (West 2011).

Here, appellant testified that Zimmer stole a newspaper from McDonald's and that he went outside to confront Zimmer about the purported theft.[6] Zimmer noted that he saw appellant exit the McDonald's waving and screaming at him. Zimmer recounted that appellant cursed at him, hit him several times causing a significant eye injury, and pointed a gun at him while saying that he was going to kill him. Appellant disputed Zimmer's recollection of the incident. Appellant stated that Zimmer hit him first, threatened to run him over, and ultimately ran over the tips of his shoes. According to appellant, it was because of Zimmer's actions that he pointed his gun at Zimmer. None of the surveillance cameras caught the altercation between appellant and Zimmer, nor did anyone else testify that they saw the entire altercation.

---

[6] Zimmer admitted taking the newspaper, but he believed it was a free newspaper that McDonald's offers to its customers. In addition, none of the testifying McDonald's employees stated that they asked appellant to retrieve the newspaper from Zimmer.

Essentially, the jury was left to decide which witness was more credible—appellant or Zimmer.

As noted above, it is within the province of the jury to resolve conflicts in the evidence, and we are to defer to the jury's resolution of such conflicts. *See Jackson*, 443 U.S. at 329, 99 S. Ct. at 2792-93; *see also Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Chambers*, 805 S.W.3d at 461; *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). Moreover, the jury is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *See Chambers*, 805 S.W.2d at 461. With its guilty verdict, the jury clearly believed Zimmer's version of the facts that appellant was the first aggressor and rejected appellant's theories of self-defense and protection of a third person's property. And based on the foregoing case law, we are to defer to the jury's resolution of the facts. *See Jackson*, 443 U.S. at 329, 99 S. Ct. 2792-93; *see also Lancon*, 253 S.W.3d at 706; *Chambers*, 805 S.W.2d at 461; *Render*, 316 S.W.3d at 859.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt and also could have found against appellant on his claims of self-defense and protection of a third person's property beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02; *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at

2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13.  Thus, we conclude that the evidence supporting appellant's conviction is sufficient.  *See Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13.  We overrule appellant's second and third issues.

## IV.    CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.


                                           AL SCOGGINS
                                           Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed December 5, 2013
Do not publish
[CR25]