

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1917-11

### DAVID RAMOS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY

**MEYERS, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, HERVEY, and COCHRAN, JJ., joined. ALCALA, J., filed a concurring opinion. KELLER, P.J., filed a dissenting opinion. KEASLER, J., dissented.**

### O P I N I O N

Appellant was indicted on one count of capital murder, one count of felony murder, and one count of injury to a child involving the death of Danielle Ramos, a child under six years old. The indictment and jury charge alleged that Appellant killed Danielle in one of three ways: (1) by shaking, (2) by shaking and causing Danielle's head to strike

an object, or (3) by shaking and striking Danielle's head with an object.[1] The jury

convicted Appellant of the lesser-included offense of manslaughter and sentenced him to

ten years in prison.[2] Appellant appealed and argued that the evidence is legally

insufficient to support the jury's determination: "(1) that he acted 'recklessly;' or (2) that

'shaking' caused Danielle's death."[3] The court of appeals found Appellant's statement

that he threw Danielle into her crib out of frustration provided a rational basis from which

the jury could have found recklessness; that is, he consciously disregarded her safety.[4]

The court of appeals affirmed the conviction of the trial court after concluding that the

testimony at trial regarding the nature of Danielle's head injuries also provided a rational

basis for the jury to conclude that Appellant's actions caused Danielle's death.[5]

Appellant filed a petition for discretionary review, which we granted to determine

whether the court of appeals erred in holding that a hypothetically correct jury charge for

manslaughter did not require the State to prove the act or acts relied upon to constitute

recklessness. However, since this petition was granted, this Court issued an opinion on

---

[1]*Ramos v. State*, No. 08-09-00279, 2011 WL 3715956, at *4 (Tex. App.–El Paso Aug. 24, 2011, pet. granted) (not designated for publication).

[2] *Id.* at *3.

[3]*Id.*

[4]*Id.* at *4.

[5]*Id.*

*Johnson v. State*[6] and addressed a nearly identical issue. Therefore, we will analyze this case in light of *Johnson* and focus on whether the notice requirement of Article 21.15 of the Code of Criminal Procedure affects the determination of whether there was a material variance between the pleading and proof in this case. We hold that the variance between pleading and proof is immaterial in this case and affirm the decision of the court of appeals.

## BACKGROUND

### *Summary of Facts*

At 9 p.m. on March 15, 2006, Danielle Ramos was admitted to the emergency room unconscious and not breathing. She was pronounced dead less than fifteen minutes later, and medical examiners ruled her death a homicide. Dr. Paul Shrode, the Chief Medical Examiner for El Paso County, concluded that Danielle's death was the result of an impact injury to her head. Appellant was interviewed soon after Danielle was pronounced dead, however his statement at that time was inconsistent with the statement he gave after being taken into police custody. Once in custody, he stated that he was home taking care of three children when he woke to the sound of Danielle crying. He became frustrated when he was unable to calm her and she continued to cry. He stated that he did not know what to do, so he "[k]ind of like not intentionally threw her hard.

---

[6]364 S.W.3d 292 (Tex. Crim. App. 2012).

Just threw her on her bassinet to see if she would stop crying." He discovered that she was not breathing that afternoon, but did not alert his wife until they returned home after dinner that evening. When asked by the detective why Appellant had not explained this during their first interview, Appellant explained, "It was my fault. I wanted something else. Something else." Appellant was charged with capital murder, felony murder, and injury to a child. At trial, Dr. Shrode testified that some type of trauma to Danielle's head caused her brain to bleed and swell. He found that it was more likely that her head was in motion when it struck an object than it was that an object struck her head when her head was stationary. He also testified that shaking, coupled with an impact, was consistent with the injuries that caused Danielle's death. This was the only evidence indicating that Appellant shook Danielle or that shaking Danielle caused her death. However, there was substantial evidence that Appellant threw Danielle into her metal-framed bassinet. Appellant was found guilty of manslaughter, an option that was submitted to the jury as a lesser-included offense of the charged capital murder. Appellant appealed and argued that the evidence was insufficient to prove that shaking caused Danielle's death. However, the court of appeals held that the hypothetically correct jury charge for manslaughter "would ask whether Appellant recklessly caused the death of Danielle Ramos," and would not include the manner and means alleged in the indictment.[7]

_____

[7]*Ramos*, No. 08-09-00279, 2011 WL 3715956, at *4.

*Appellant's Argument*

Appellant argues that the State failed to prove that Appellant caused Danielle's death by shaking her as alleged in the indictment and therefore did not meet the notice requirement of Article 21.15 of the Code of Criminal Procedure. Appellant contends that under Article 21.15, a hypothetically correct jury charge for manslaughter should have included the act or acts relied upon to constitute recklessness and that the court of appeals ignored the acts alleged when conducting its sufficiency review. Appellant argues that there is no evidence that shaking caused Danielle's death.

*State's Argument*

The State argues that the variance in pleading and proof is immaterial. First, in result-of-conduct offenses like manslaughter, where the unit of prosecution is death of the victim, a variance in pleading and proof in the manner of the offense's commission is immaterial. Second, the acts pled in the indictment were not acts constituting recklessness since the indictment did not charge manslaughter. Therefore, the State argues that the court of appeals did not err in its decision.

## ANALYSIS

When determining the legal sufficiency of the evidence, we must (1) consider the entire record in the light most favorable to the verdict and (2) determine whether, based on the record, any rational trier of fact could have found the defendant guilty of all the

essential elements of the offense beyond a reasonable doubt.[8]

Additionally, the essential elements of the offense are defined by the hypothetically correct jury charge for the case.[9]  A hypothetically correct jury charge does four things: (1) accurately sets out the law, (2) is authorized by the indictment, (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and (4) adequately describes the particular offense for which the defendant was tried.[10]  However, we have determined that a hypothetically correct jury charge does not have to include all of the charging instrument's allegations.[11]

As we explained in *Johnson*, there are two ways a variance can occur in pleading and proof:

> First, a variance can involve the statutory language that defines the offense. This can happen when a statute specifies alternate methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves, instead, an unpled method.  For example, the retaliation statute makes it a crime to threaten a "witness" or "informant." The first type of variance occurs if the State pleads only "witness" in the charging instrument and proves only the unpled element of "informant" at trial.  Second, a variance can involve a non-statutory

---

[8]*Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *see also Jackson v. Virginia*, 443 US. 307, 319 (1979).

[9]*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[10]*Id.*

[11]*Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001).

allegation that is descriptive of the offense in some way. For example, the charging instrument pleads "Mary" as the victim, but the State proves "John" at trial. Or the charging instrument pleads the offense was committed with a knife, but the State proves at trial that a baseball bat was used.[12]

The variance in *Johnson* was of the second type, a non-statutory allegation, which is precisely the same kind of variance that is at issue in this case. In *Johnson*, the relevant count of aggravated assault charged that the appellant intentionally or knowingly caused serious bodily injury by hitting the victim with his hand or by twisting her arm with his hand. However, the victim testified that appellant threw her against a wall, which caused her serious bodily injury. We held that the variance involved a non-statutory type of allegation that does not help define the allowable unit of prosecution for this result-of-conduct crime, and therefore, the variance did not render the evidence insufficient and is immaterial.

In this case, the indictment alleged, and the charge required the jury to decide whether, Appellant caused the victim's death by shaking her but testimony indicated that he caused an object to strike her head, resulting in her death. Appellant argues that because Appellant was convicted of manslaughter, Section 21.15 of the Code of Criminal Procedure applies, the State is required to plead the acts relied upon to constitute recklessness. Section 21.15 states:

---

[12]*Johnson*, 364 S.W.3d at 294.

> Whenever recklessness or criminal negligence enters into or is a part or element of any offense, or it is charged that the accused acted recklessly or with criminal negligence in the commission of an offense, the complaint, information, or indictment in order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal negligence, and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly or with criminal negligence.[13]

However, Section 21.15 does not apply in this situation because the indictment did not include manslaughter, which was a lesser-included offense. Furthermore, manslaughter is a "result of conduct" crime where the "focus" or gravamen is the "death of the individual."[14]

Applying the law to this case, we must determine whether any variance in pleading and proof was material. As mentioned above, the purported variance in this case involves a non-statutory allegation that is descriptive of the elements of the offense. Specifically, the variance deals with the alleged method by which Appellant caused the death of the victim–whether by shaking, shaking and striking her head against an object, or shaking and striking her head with an object. While the State plead the above three acts as the possible method of causing the victim's death, the evidence fails to prove definitively the exact method of commission of manslaughter. However, as we held in *Gollihar*, the

---

[13]Tex. Code Crim. Proc. Ann. § 21.15 (West 2011).

[14]*Ervin v. State*, 991 S.W.2d 804 (Tex. Crim. App. 1999).

pleading of unnecessary facts gives rise to an immaterial variance.[15]

There are three relevant opinions that provide us with a valid framework of analysis and guide us when determining whether a variance in pleading and proof is material in regard to legal sufficiency.

First, in *Johnson* we focused on the offense's unit of prosecution by looking at the gravamen of the offense.[16] As previously explained, the gravamen of murder is death of the victim.[17] Therefore, the manner by which the murder is committed is irrelevant as long as surrounding evidence shows beyond a reasonable doubt that Appellant was reckless and caused the victim's death.[18] Applied to this situation, any variance in pleading and proof is immaterial because the surrounding evidence and Appellant's testimony show that Appellant (1) was reckless in his care of the victim and (2) caused the victim's death.[19] In *Johnson*, we held that in "result of conduct" crimes such as

---

[15]*Gollihar*, 46 S.W.3d at 257.

[16]*Johnson*, 364 S.W.3d at 295–96.

[17]*Ervin*, 991 S.W.2d at 804.

[18]*Johnson*, 364 S.W.3d at 295–96.

[19]There was ample evidence that could have led a jury to conclude that Appellant was reckless in his actions. He admitted to throwing seven-month-old Danielle into her metal bassinet "to see if she would stop crying." There was also evidence that Appellant was also reckless in his inaction. When Appellant checked on Danielle, he believed she was in a "very deep sleep" and was not breathing or responding. Although Appellant sensed that something was wrong, he continued other activities, including taking his wife to dinner, before finally informing

aggravated assault, the gravamen of the offense is the serious bodily injury, not what caused the injury.[20] Therefore, a variance regarding a non-statutory allegation describing the method of the offense of a result-of-conduct offense is immaterial.

Second, in *Gollihar* we clarified the effect of variances between indictment and proof and focused on whether (1) there was sufficient notice to the defendant so he may prepare an adequate defense at trial, and (2) there was no risk of double jeopardy.[21] The facts of this case are similar to those in *Gollihar*. In *Gollihar*, the defendant was charged with stealing a go-cart model 136202, however, at trial the defendant was proved to have stolen go-cart model 136203.[22] We held that the variance in pleading and proof was immaterial because the evidence and defendant's testimony showed that he was on notice.[23] Furthermore, the facts surrounding the offense were so specific regarding the theft of one go-cart that we determined that there was little risk that the defendant would be re-prosecuted for the same offense.[24] Similarly in this situation, notwithstanding any

others of his actions.

[20]*Johnson*, 364 S.W.3d at 295–96.

[21]*Gollihar*, 46 S.W.3d at 243.

[22]*Id.* at 244.

[23]*Id.* at 258.

[24]*Id.*

variance in pleading and proof regarding the precise method by which Appellant caused the death of the victim, Appellant was still put on notice regarding the specific offense of manslaughter because Appellant was charged with murder, and the events surrounding the event were unique.  Also, because this manslaughter concerns one deceased victim, there is no risk that Appellant would later be prosecuted for the same offense.  Therefore, the variance is immaterial.

Finally, we will employ the cumulative-force analysis used in *Lucio v. State*,[25] where if an uncertainty regarding legal sufficiency exists, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."[26]  In *Lucio*, we determined that the evidence was legally sufficient to support a conviction for capital murder, even though the defendant admitted only that she struck the two-year-old victim at some time.[27]  The evidence indicated that the defendant had the opportunity to inflict the victim's fatal injuries, as she was the victim's primary care-giver, she told police that she spanked or hit the victim several times, and that the victim's father and her older children did not hit the victim.  Based on this evidence the jury could infer that defendant

[25]351 S.W.3d 878 (Tex. Crim. App. 2011).

[26]*Id.* at 878.

[27]*Id.*

caused the victim's fatal injuries despite the fact that the evidence did not prove the method of commission of the offense. The facts of *Lucio* almost mirror the facts of our case–like in *Lucio*: (1) Appellant corroborated committing the result-of-conduct offense; and (2) the evidence does not prove the specific method of commission of the offense. As in *Lucio*, the evidence in this case would lead a jury to infer beyond a reasonable doubt that Appellant committed the offense of manslaughter, and therefore the variance is immaterial.

***Conclusion***

Because (1) the gravamen of manslaughter is the death of the victim, and the evidence shows beyond a reasonable doubt that Appellant caused the death of the victim, (2) notice was adequately provided to Appellant, and there is no risk of double jeopardy, and (3) the cumulative force of the evidence supports the jury's verdict that, beyond a reasonable doubt, the Appellant caused the death of the victim, the variance in pleading and proof is immaterial. We affirm the decision of the court of appeals.

Meyers, J.

Delivered: June 26, 2013

Publish