# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00027-CR

---

**Blair Beck McCall, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 274TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-15-0868, THE HONORABLE GARY L. STEEL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The State indicted Blair Beck McCall for the felony offense of assault by causing bodily injury to a member of McCall's household or with whom he had a dating relationship "by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood . . . by applying pressure to the throat or neck and blocking the nose or mouth of" the complainant. *See* Tex. Penal Code § 22.01(a)(1), (b)(2)(B); Tex. Fam. Code § 71.004. The trial court's charge submitted that offense to a jury and, on the State's request, another offense titled "the lesser included offense of Assault – Bodily Injury Family Violence." The jury found McCall not guilty of the felony offense but guilty of the lesser included offense. The trial court then assessed punishment at one year in the county jail, probated for 18 months, with a $2,500 fine and entered a conforming judgment, noting an "affirmative finding of family violence," *see* Tex. Fam. Code § 71.004; Tex. Code Crim. Proc. art. 42.013, and categorizing the offense as a Class A misdemeanor.

In four issues, McCall contends that (1) the trial court erred by submitting the misdemeanor offense to the jury because it is not a lesser included offense of the charged felony offense, (2) the evidence was insufficient to support the guilty verdict on the misdemeanor offense, (3) there was a material variance between the indictment and the proof at trial on bodily injury, and (4) the jury charge contained an improper comment on the weight of the evidence. We will affirm the trial court's judgment of conviction.

## BACKGROUND

The complainant, Vivian Sanchez, was engaged to McCall, and they lived together at McCall's house with his parents. The four would often drive to a nearby town together on Sundays to eat dinner. After one such dinner, during the ride home, they had an argument over a financial-aid application.

After they arrived home, McCall's mother went into the house, and Sanchez and McCall stayed outside to move some uprooted bushes. McCall's father said that he stayed outside for a time and then went inside, watching Sanchez and McCall for the entire time that they were outside in front of the house. Sanchez was angry with McCall for not speaking up for her during the argument and while outside refused to speak with him, which made him mad. She went for a walk alone around the block to clear her head. When she returned, she found McCall outside the house near his truck waiting for her. What happened after she returned is a subject of disagreement among her, McCall, and his parents.

According to Sanchez, McCall asked, using profanity, if she would talk to him. McCall insisted that they talk, so he unlocked the tailgate, and they got on it and laid back. After their conversation got "escalated," "he came around with his left hand, grabbed [her] throat,

2

choked [her], and slammed [her] into the bed of the truck," all within a few seconds. McCall is 6′5″ tall, and she is 5′. McCall's hand was large enough to cover her whole throat. He put his left hand around her neck, "grabbed tight," and "squeezed." But he never "impede[d]" her mouth or nose with, for example, his hand. When he grabbed and slammed her, "[e]verything was black" for Sanchez, she could not breathe, she "was so scared [she] peed [her]self a little bit," "[t]here was a lot of pressure on [her] neck," and she was in "severe pain." The slam immediately created a knot on her head "behind [her] left ear to about the middle of [her] head" at "the bottom part of [her] skull right before it meets the top of [her] neck" that was "tender to the touch."

McCall got up from the truck bed when Sanchez came to. She "could not see straight" and "didn't feel like [she] could get up, so [she] just slid down the bed of the truck." She ran to the front door of the house, where she and McCall came together again. She was "holding [her] head, trying to catch [her] breath"; "couldn't see straight"; and "pound[ed] on the door" because it was locked. McCall's father answered the door, and she told him that McCall had just "choke-slammed" her into the bed of the truck. McCall denied it and said that instead Sanchez had been hitting him.

She then ran inside and locked herself in a bathroom to call the police and for a close friend of her family to pick her up. She decided against calling the police because McCall was a peace officer and at the time she "felt like [she] could not get out of there safely," "just didn't have any faith in them," and "thought that they would probably just take a report and make it disappear." She only called her family's friend, Melissa Rocha-Payne, and told her that McCall and she "had a fight and that he hurt [her] and that [she] needed to leave immediately." Sanchez emerged from the bathroom, and McCall came into the room where Sanchez was and wanted a hug from her, but she responded "that he had already hurt me and that [she] didn't want to see him

3

ever again, that [she] didn't want to touch him," and that she "didn't want anything else to do with him." She quickly packed a bag and got into Rocha-Payne's van waiting outside.

Once inside the van, Sanchez "felt like [she] had been hit, like, by a bus" and was "in so much pain." Her "head was pounding," and her eyes "were red and puffy." They drove to Rocha-Payne's house, where Sanchez felt "very nauseous," "threw up a little bit," and could not sleep because she "was in so much pain." While Sanchez was at Rocha-Payne's house, Rocha-Payne felt a knuckle-sized lump on the side of Sanchez's head, as if she had hit her head on something. Later that night, her family took her to a hospital, where hospital personnel ran a CT scan of her head and diagnosed her with a concussion. She was treated by Dr. Erik Strelnieks and told him that "she had been choked," "that her head was hit against the edge of a truck bed," and that she thought that she had lost consciousness. She reported double vision, nausea, and a headache. An examination revealed that she had "a contusion on the right posterior occipital scalp" and exhibited signs of a concussion. She also had difficulties swallowing.

After she left the hospital, she went the same day to the Hays County Sheriff's Office to file a report of the incident because she then felt safe to do so. She spoke with Deputy Robert Blanchard and later with Detective Mark Opiela. Deputy Blanchard interviewed Sanchez and could feel an injury on her, and she winced in pain and made a noise when he "touched the back, right corner of her head behind her ear." He could feel "a lump" there, about the "size of a silver dollar" and consistent with her account of the incident. It also hurt her somewhat to speak, "there was pain when swallowing" and "trouble swallowing," she was coughing, and she described her voice as sounding different from usual. She also reported neck pain.

McCall's parents testified to a different version of events, matching what McCall said to Detective Opiela in a recorded interview. McCall's parents testified, and McCall told

4

Detective Opiela, that Sanchez struck McCall multiple times, that she injured him, but that McCall never struck or put his hands on Sanchez in any offensive way. McCall said, "there's no way she could've sustained an injury" during the incident. And McCall's father told Sanchez that she was lying about what happened.

*Indictment and trial*

The State indicted McCall for the felony offense of what the indictment titled "Assault Family Violence-Impeding." The indictment alleged that McCall

> intentionally, knowingly, or recklessly cause[d] bodily injury to Vivian Sanchez, a member of the defendant's family or member of the defendant's household or person with whom the defendant has or has had a dating relationship, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of Vivian Sanchez by applying pressure to the throat or neck and blocking the nose or mouth of Vivian Sanchez.

The State tried the case to a jury and called Sanchez, Rocha-Payne, Deputy Blanchard, Dr. Strelnieks, and Detective Opiela as witnesses. It also offered into evidence the audiovisual recording of Detective Opiela's interview with McCall, which was admitted and played for the jury. McCall called his parents as witnesses in his defense.

After it rested, the State requested that the trial court submit to the jury "a lesser-included assault, bodily injury, family violence" offense because it believed that the evidence caused the felony assault's element of "strangulation [to] come into question." The State called this a "lesser-included" offense of "just assault" and a "Class A misdemeanor." At the charge conference, McCall's counsel objected to submitting the misdemeanor offense: "I am going to object to the lesser-included, but I think the evidence has been raised. . . . So I suspect that'll be the Court's ruling." The court overruled the objection and submitted both the felony assault

5

and the misdemeanor assault to the jury. The charge and verdict form called the misdemeanor offense "the lesser-included offense of Assault – Bodily Injury Family Violence."

The charge's submission of the felony offense instructed the jury that the offense involved five elements. It listed the fourth and fifth elements as follows:

4. the injury was caused by—

    a. applying pressure to Vivian Sanchez' throat or neck or

    b. blocking Vivian Sanchez' nose or mouth, and

5. that conduct

    a. impeded Vivian Sanchez' normal breathing, or

    b. impeded the circulation of Vivian Sanchez' blood.

It then instructed the jury that it must find each of the five elements proven beyond a reasonable doubt to find McCall guilty but that "[i]f you all agree the [S]tate has failed to prove, beyond a reasonable doubt, one or more of elements 1, 2, 3, 4, or 5 listed above, you must find the defendant 'not guilty.'" The charge proceeded to the misdemeanor offense and instructed the jury:

> If you have a reasonable doubt as to element 5, above, that is whether the defendant impeded Vivian Sanchez' normal breathing or impeded the circulation of Vivian Sanchez' blood, then you will consider whether the State has proven the defendant guilty of the lesser-included offense of Assault – Bodily Injury Family Violence.

It defined the misdemeanor offense as involving four elements—the same first four elements of the felony offense, including element 4 about applying pressure to Sanchez's throat or neck or blocking her nose or mouth.

The jury found McCall not guilty of the felony offense but guilty of the misdemeanor offense. The court then entered judgment on the guilty verdict, noting an "affirmative

6

finding of family violence" and categorizing the offense as a Class A misdemeanor. This appeal followed.

## DISCUSSION

### I. Submitting misdemeanor assault by causing bodily injury as a lesser included offense was not error.

In his first issue, McCall contends that the trial court erred by submitting the misdemeanor offense to the jury because it "was not a lesser included charge of Assault Family Violence – Impeding." He explains:

> Submission of a misdemeanor lesser charge to the jury that inquired whether Blair McCall caused bodily injury to Ms. Sanchez by applying pressure to her neck or throat is the functional equivalent of the charge for which Blair McCall was acquitted. There are no legal and factual grounds to uphold Blair McCall's conviction of the misdemeanor charge on the basis that it is supported by the same evidence and felony circumstances of impeding and occlusion of which Blair McCall was acquitted, and that the State now contends is a misdemeanor.

The State counters that "Assault Bodily Injury – Family Violence is a lesser-included offense of Assault Family Violence – Impeding" so that "Assault Bodily Injury – Family Violence is established by the same or less proof than the facts required in Assault – Impeding."

We review a claim of charge error under a two-step framework. *Harmel v. State*, 597 S.W.3d 943, 956 (Tex. App.—Austin 2020, no pet.). We first determine whether the claimed error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Harmel*, 597 S.W.3d at 956. "[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *accord Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). Second, if there is error, we evaluate the harm caused by the error. *Ngo*, 175 S.W.3d at 743; *Harmel*,

7

597 S.W.3d at 956. The amount of harm needed for a reversal depends on whether the defendant preserved a complaint about the error. *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). If not preserved, we may reverse only if the error caused "egregious harm." *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008). But if preserved, charge error requires reversal when we find "some harm" to the defendant's rights. *Ngo*, 175 S.W.3d at 743.

Determining whether submitting a lesser included offense was error usually requires its own two-step inquiry. *See Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). The first step is a question of law—determining whether an offense is a lesser included offense of the charged offense. *Id.* This step "does not depend on the evidence to be produced at the trial" but is instead "capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense." *Id.* at 535–36. An offense is a lesser included offense of the charged offense when it is within the proof necessary to establish the charged offense. *See* Tex. Code Crim. Proc. art. 37.09(1); *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016).

To make the first-step determination, we compare the statutory elements for the greater offense as modified by any descriptive averments in the indictment with the statutory elements of the lesser offense. *See State v. Meru*, 414 S.W.3d 159, 162–63 (Tex. Crim. App. 2013). An offense is within the proof necessary to establish the charged offense if the indictment for the greater offense either (1) alleges all the elements of the lesser included offense or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for providing notice) from which all the elements of the lesser included offense may be deduced. *Id.* at 162.

8

The second step of the analysis for lesser included offenses requires analyzing whether the evidence supported submitting the lesser included offense to the jury. *Hall*, 225 S.W.3d at 536. But we dispense with the second step when, as here, the State requested submission of the lesser included offense. *See Grey v. State*, 298 S.W.3d 644, 645 (Tex. Crim. App. 2009).

The indictment here charged McCall with

> intentionally, knowingly, or recklessly caus[ing] bodily injury to Vivian Sanchez, a member of the defendant's family or . . . household or person with whom the defendant has or has had a dating relationship, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood . . . by applying pressure to the throat or neck and blocking the nose or mouth of Vivian Sanchez.

The elements of the charged felony offense as modified by the indictment are therefore

(1) that the defendant intentionally, knowingly, or recklessly

(2) caused bodily injury to the complainant

(3) by impeding her normal breathing or circulation of blood by applying pressure to her throat or neck and blocking her nose or mouth and

(4) that the complainant either was a member of defendant's family, was a member of his household, or was or had been in a dating relationship with him.

*See* Tex. Penal Code § 22.01(a)(1), (b)(2)(B); *Philmon v. State*, 609 S.W.3d 532, 536 (Tex. Crim. App. 2020) (listing similar elements of offense as modified by that case's indictment).

To continue under the first step of lesser-included-offense analysis, we must identify the statute that defines the Class A misdemeanor offense for which McCall was convicted. *See Meru*, 414 S.W.3d at 162–63; *Nangurai v. State*, 507 S.W.3d 229, 233 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (comparing elements of charged felony assault, as modified by indictment's allegations, of complainant with whom defendant was in dating relationship with

9

elements of misdemeanor assault under Penal Code section 22.01(a)(1)); *Brumbalow v. State*, 432 S.W.3d 348, 351–52 (Tex. App.—Waco 2014, no pet.) (comparing elements of charged offense "as modified by the indictment" with statutory elements of lesser offense).  The trial court's judgment recites that McCall was convicted of the Class A misdemeanor offense of "Assault Bodily Injury Family Violence," and the charge and verdict form referred to the offense by that same name.  The charge defined the misdemeanor offense's elements as follows:

1.  the defendant . . . caused bodily injury to Vivian Sanchez, and

2.  the defendant –

    a.  intended to cause the bodily injury; or

    b.  had knowledge that he would cause the bodily injury; or

    c.  was reckless about whether he would cause the bodily injury; and

3.  Vivian Sanchez was –

    a.  a member of the defendant's family, or

    b.  a member of the defendant's household, or

    c.  a person with whom the defendant did have or had had a dating relationship, and

4.  The injury was caused by—

    a.  applying pressure to Vivian Sanchez' throat or neck or

    b.  blocking Vivian Sanchez' nose or mouth.

The charge instructed the jury that it must find all four numbered elements proven beyond a reasonable doubt to find McCall guilty of the misdemeanor offense, but it also instructed that the jury need not agree on the specific mental state in items 2a, 2b, or 2c; the specific relationship in items 3a, 3b, or 3c; or the specific means of causing the injury in 4a or 4b.

The statute that provides the elements for the Class A misdemeanor for which McCall was convicted could only be Penal Code section 22.01(a)(1). Of Section 22.01(a)'s three options for conduct that constitutes an assault, only subsection (a)(1)—causing bodily injury—is raised by the indictment here. Section 22.01(b) then provides that an (a)(1) offense is by default a Class A misdemeanor but becomes a third-degree felony when the complainant is in one of a few defined situations, including the subsection (b)(2)(B) situation raised by the indictment here. *See Marshall v. State*, 479 S.W.3d 840, 844 (Tex. Crim. App. 2016) (noting that Class A misdemeanor for intentionally, knowingly, or recklessly causing bodily injury "may be enhanced to a third-degree felony if committed against a family member 'by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth'" (quoting Tex. Penal Code § 22.01(b)(2)(B))); *Guzman v. State*, 552 S.W.3d 936, 941 & n.5 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (noting that "[f]irst-time assault involving family violence is a Class A misdemeanor" and that it lacks "the elevating element of impeding breathing or circulation"). Because of the statute's plain language and structure and because the judgment of conviction recites that McCall was convicted of a Class A misdemeanor, the elements that we must use in our lesser-included-offense analysis are the *statutory* elements from Section 22.01(a)(1). *See Meru*, 414 S.W.3d at 163–64 (comparing elements of greater offense as they were "listed in the indictment" with only the statutory elements of lesser offense); *Nangurai*, 507 S.W.3d at 233 (comparing elements of charged felony assault of complainant with whom defendant was in dating relationship as modified by indictment's allegations with only the statutory elements of Section 22.01(a)(1) misdemeanor assault); *Brumbalow*, 432 S.W.3d at 351–52 (comparing elements of greater offense "as modified by the indictment" with only the statutory elements of

11

lesser offense). Those elements are that (1) the defendant intentionally, knowingly, or recklessly (2) caused bodily injury to the complainant. *See* Tex. Penal Code § 22.01(a)(1).

Comparing the elements of felony assault as modified by the indictment with these statutory elements, we conclude that the indictment alleged all the elements of Section 22.01(a)(1)'s misdemeanor offense, *see Meru*, 414 S.W.3d at 162, and therefore that the misdemeanor offense was within the proof necessary to establish the charged offense, *see* Tex. Code Crim. Proc. art. 37.09(1); *Bullock*, 509 S.W.3d at 924; *see also Nangurai*, 507 S.W.3d at 233 (holding that Section 22.01(a)(1) misdemeanor assault was within proof necessary to establish charged felony assault of complainant with whom defendant was in dating relationship). The first two elements of the felony offense as charged by the indictment—that (1) McCall intentionally, knowingly, or recklessly (2) caused bodily injury to Sanchez—are the two elements that Section 22.01(a)(1) requires.

Some confusion might have arisen here from the use of "Assault Bodily Injury Family Violence" in the trial court's judgment and in the charge and verdict form. "Family violence" can refer either to the aggravating element in Section 22.01(b)(2), which raises a Class A misdemeanor to a third-degree felony, or to the finding called for by Code of Criminal Procedure article 42.013. That article says: "In the trial of an offense under Title 5, Penal Code, if the court determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." Tex. Code Crim. Proc. art. 42.013. The jury here acquitted McCall of felony assault under Section 22.01(b)(2), and the finding called for by Article 42.013 is not an element of any offense, *see Boas v. State*, 604 S.W.3d 488, 492–93 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see also Butler v. State*, 189 S.W.3d 299, 302 (Tex. Crim. App. 2006)

12

(noting that Article 42.013's plain language "assigns the responsibility for making the family-violence determination solely to the trial court"). The use of "family violence" in the judgment here is thus for Article 42.013's non-element required judicial finding.

In all, we hold that the trial court did not err by submitting the misdemeanor offense of assault by causing bodily injury, which is defined by Section 22.01(a)(1). *See Hall*, 225 S.W.3d at 535; *Ngo*, 175 S.W.3d at 743. We overrule McCall's first issue.

## II. The evidence was sufficient to support the guilty verdict, and there is no reversible material variance.

McCall's second and third issues implicate related lines of precedent, so we address them together. In his second issue, he contends that the trial court erred by submitting misdemeanor assault to the jury because the evidence was "insufficient to support the elements of the lesser included offense."[1] In support of this issue, he argues from the *Jackson v. Virginia* standard and from Court of Criminal Appeals opinions adopting and applying that standard. *See generally* 443 U.S. 307 (1979); *Fernandez v. State*, 479 S.W.3d 835 (Tex. Crim. App. 2016). We do not construe this issue as another assignment of error to the submission of misdemeanor assault to the jury because, as stated above, precedent requires that we dispense with the evidence-review step of lesser-included-offense analysis when the State requested the lesser included offense. *See Grey*, 298 S.W.3d at 645. We construe this issue instead as one about the sufficiency of the evidence to support the guilty verdict.

---

[1] McCall couches his arguments in terms of "both legal[] and factual[]" sufficiency, but precedent requires that we review only for legal sufficiency. *See, e.g.*, *Canada v. State*, 547 S.W.3d 4, 12 n.3 (Tex. App.—Austin 2017, no pet.).

13

In his third issue, McCall contends that the trial court erred by submitting misdemeanor assault "based on conduct and acts by [McCall] that were not set forth in the indictment and were not within the strangulation or suffocation elements of the lesser included charge." He says that this led to "a material variation between the indictment and the evidence presented at trial as to bodily injury." This issue raises the law of material variances, which intersects the law of review for evidentiary sufficiency. *See Byrd v. State*, 336 S.W.3d 242, 247 (Tex. Crim. App. 2011) (material variances are "actually a failure of proof because the indictment sets out one distinct offense, but the proof shows an entirely different offense"); *Gollihar v. State*, 46 S.W.3d 243, 247 (Tex. Crim. App. 2001) ("Some courts treat variance claims as a notice-related claim, distinct from an insufficiency of the evidence claim, but we have routinely treated variance claims as insufficiency of the evidence problems.").

When reviewing for evidentiary sufficiency, "evidence is considered sufficient to support a conviction when, after considering all of the evidence in the light most favorable to the prosecution, a reviewing court concludes that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Hernandez v. State*, 556 S.W.3d 308, 315 (Tex. Crim. App. 2017).[2] The essential elements of the offense are "the elements of the offense as defined by the hypothetically correct jury charge *for the case*." *Id.* at 315 (quoting *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012)). A hypothetically correct jury charge reflects the governing law, the indictment, the State's burden of proof and theories of liability, and an adequate description of the offense for the particular case. *Id.* It includes the

---

[2] Unless otherwise noted, all *Hernandez* citations are to the opinion on original submission, which the Court affirmed on rehearing. *Hernandez v. State*, 556 S.W.3d 308, 331 (Tex. Crim. App. 2018) (op. on reh'g) ("We affirm our original opinion . . . , and we reject Hernandez's arguments on rehearing for the reasons stated herein.").

14

statutory elements of the offense as modified by the indictment. *See id.* at 312–13; *Johnson*, 364 S.W.3d at 294.

There are sometimes variances between allegations in the indictment and the State's proof at trial. *Hernandez*, 556 S.W.3d at 312. Only material variances affect the hypothetically correct jury charge. *Id.* Allegations that lead to immaterial variances need not be incorporated into the hypothetically correct jury charge for the case. *Johnson*, 364 S.W.3d at 294.

Two types of variances can be material. *See Hernandez*, 556 S.W.3d at 313–14; *Johnson*, 364 S.W.3d at 294–95. "The first type of variance occurs when the State's proof deviates from the *statutory* theory of the offense as alleged in the indictment; the State may not plead one specific statutory theory but then prove another." *Hernandez*, 556 S.W.3d at 313 (citing *Johnson*, 364 S.W.3d at 294). This type of variance is always material. *Id.* The second type of variance is a "non-statutory allegation that is descriptive of the offense in some way." *Id.* at 313–14 (citing *Johnson*, 364 S.W.3d at 294). Whether this type is material turns on whether it would result in conviction for a different offense than what the State alleged. *Id.* at 314. If the variance "converts the offense proven at trial into a different offense than what was pled in the charging instrument," then it is material. *Id.* at 316.

The key to identifying different offenses is pinpointing the "allowable unit of prosecution" for each offense. *See id.*; *Johnson*, 364 S.W.3d at 295–96. A statute's allowable unit of prosecution is the "distinguishable discrete act that is a separate violation of the statute." *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011) (quoting *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006)). "Absent an explicit statement that 'the allowable unit of prosecution shall be such-and-such,' the best indicator of legislative intent regarding the

15

unit of prosecution is the gravamen or focus of the offense." *Id.* at 630 (quoting *Jones v. State*, 323 S.W.3d 885, 889 (Tex. Crim. App. 2010)).

The gravamen of Section 22.01(a)(1) assault by causing bodily injury is the bodily injury caused, making the offense a "result of conduct" offense. *See Price v. State*, 457 S.W.3d 437, 442 (Tex. Crim. App. 2015); *Landrian v. State*, 268 S.W.3d 532, 533, 536–37, 540 (Tex. Crim. App. 2008). This means that "[t]he precise act or nature of conduct in this result-oriented offense is inconsequential." *Landrian*, 268 S.W.3d at 537; *accord Hernandez*, 556 S.W.3d at 316 ("The variance regarding Appellant's use of his hands would be one describing only the manner and means by which the bodily injury was caused. Under *Johnson*, this would fall into the second category of variance, a 'non-statutory allegation that describes the offense in some way.'" (citing *Johnson*, 364 S.W.3d at 292)). What matters is the injury suffered by the complainant, not the manner and means of its commission. *See Hernandez*, 556 S.W.3d at 327 (op. on reh'g) ("[B]ecause the manner and means by which an aggravated assault is effectuated is not a unit of prosecution for aggravated assault, nor does it describe a unit of prosecution for aggravated assault, the manner-and-means allegation is not included in the hypothetically-correct jury charge and should be disregarded in a legal-sufficiency analysis."); *Ramos v. State*, 407 S.W.3d 265, 270 (Tex. Crim. App. 2013) ("In *Johnson,* we held that in 'result of conduct' crimes such as aggravated assault, the gravamen of the offense is the serious bodily injury, not what caused the injury. Therefore, a variance regarding a non-statutory allegation describing the method of the offense of a result-of-conduct offense is immaterial." (citing *Johnson*, 364 S.W.3d at 295–96)); *Landrian*, 268 S.W.3d at 537 ("The gravamen of the offense of aggravated assault is the specific type of assault defined in Section 22.01.").

16

"Bodily injury" means "physical pain, illness, or any impairment of physical condition." Tex. Penal Code § 1.07(a)(8). Any physical pain, however minor, suffices to establish bodily injury. *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012). The jury may infer that a victim felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it. *Id.*; *accord Wawrykow v. State*, 866 S.W.2d 96, 99–100 (Tex. App.—Beaumont 1993, no pet.). A jury could reasonably infer that a complainant suffered bodily injury when the defendant impeded the complainant's normal breathing even when the defendant "does not necessarily prevent breathing altogether." *See Marshall*, 479 S.W.3d at 845.

Besides "physical pain," "bodily injury" also includes "any impairment of physical condition." Tex. Penal Code § 1.07(a)(8). Texas courts have interpreted "impairment" to include the diminished function of a bodily organ. *Garcia*, 367 S.W.3d at 688; *see, e.g.*, *Camarillo v. State*, 82 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.) (impairment established when injury to victim's nose made breathing difficult); *Adams v. State*, 969 S.W.2d 106, 111 (Tex. App.—Dallas 1998, no pet.) (impairment established when defendant's conduct interfered with victim's ability to stand and walk).

Here, the evidence included Sanchez's testimony that McCall grabbed her throat, choked her by squeezing her throat, and slammed her head into the truck. This, she testified, caused her severe pain and a knot to develop immediately on her head. It also caused "[e]verything" to go "black" for her, forced her to urinate some, and stopped her breathing for a time. The evidence also included testimony from Rocha-Payne, Deputy Blanchard, and Dr. Strelnieks about the knot or contusion on her head. Finally, Dr. Strelnieks also testified about Sanchez's reports of lost consciousness, double vision, nausea, a headache, and difficulty swallowing and his view that she was showing signs of a concussion. Based on this evidence, we conclude that the jury had before

17

it sufficient evidence to allow any rational trier of fact to find that McCall intentionally, knowingly, or recklessly caused bodily injury to Sanchez in the form of both physical pain and impairment. *See* Tex. Penal Code §§ 1.07(a)(8), 22.01(a)(1); *Hernandez*, 556 S.W.3d at 315. This is all that we must measure the evidence against in the hypothetically correct jury charge for this conviction for misdemeanor assault by causing bodily injury. *See Hernandez*, 556 S.W.3d at 327 (op. on reh'g); *Ramos*, 407 S.W.3d at 270; *Landrian*, 268 S.W.3d at 533, 536–37, 540.

McCall, however, argues that our review of the evidence must be much more narrow. He says that the State needed to prove not just any bodily injury but "strangulation or suffocation" because of the indictment's allegations and the charge given to the jury. He says that the State "tried a felony case" whose theory was that Sanchez "was strangled or suffocated in a way that impeded her blood circulation or blocked her airflow." He therefore reasons that the acquittal for felony assault requires the evidence, to support his conviction for misdemeanor assault, to show a strangulation or suffocation that did *not* impede Sanchez's breathing or circulation of the blood. Relatedly, he advances a notice argument:

> By presenting evidence of bodily injury to Ms. Sanchez in a manner not set forth in either the indictment or in the elements of the lesser included charge, [McCall] was deprived of his due process right to receive adequate notice of the charged offense before trial in order to prepare his defense.

We reject McCall's arguments for four reasons. First, we are to measure the evidence against the hypothetically correct charge for the misdemeanor offense, not against the charge actually given. *See Ramjattansingh v. State*, 548 S.W.3d 540, 550–52 (Tex. Crim. App. 2018). This remains true even if the State introduced an "extra burden" for itself in the actual jury charge or if "the State erroneously included unnecessary surplusage in the indictment." *See id.* Thus, it does not matter to our evidence-sufficiency and variance analysis that the actual jury charge here required the jury

18

to find that McCall caused Sanchez's injury either by "applying pressure to [her] throat or neck" or "blocking [her] nose or mouth" to reach a guilty verdict on misdemeanor assault by causing bodily injury.

Second, the indictment's allegation of causing bodily injury "by applying pressure to the throat or neck and blocking the nose or mouth" does not give rise to a material variance, so we need not incorporate that allegation into the hypothetically correct jury charge. Because assault by causing bodily injury is a "result of conduct" offense,[3] *see Price*, 457 S.W.3d at 442; *Landrian*, 268 S.W.3d at 533, 536–37, 540, how the bodily injury was caused does not help define the allowable unit of prosecution for this type of assault offense, so a variance relating to how the defendant caused the assault injury "cannot be material," *see Hernandez*, 556 S.W.3d at 314 (analyzing similar offense of aggravated assault by causing bodily injury and citing *Johnson*, 364 S.W.3d at 296–98). The indictment's allegation about "applying pressure to the throat or neck and blocking the nose or mouth" concerns the means of causing injury, *Price*, 457 S.W.3d at 443; *see also Hernandez*, 556 S.W.3d at 316 (reasoning that choking with a hand or striking with a hand are alternative means of committing assault by causing bodily injury), while Section 22.01(a)(1) involves no *statutory* manner and means. Thus, the indictment's allegation does not create a material variance and need not be incorporated into the hypothetically correct jury charge. *See Hernandez*, 556 S.W.3d at 312; *Johnson*, 364 S.W.3d at 294.

Third, we address McCall's argument that a variance arose from the indictment's allegation that Sanchez's "normal breathing or circulation of the blood" was "imped[ed]." Even

---

[3] McCall asserts that assault of the kind charged here is a "nature of conduct" offense and cites as support *Price v. State*, 457 S.W.3d 437 (Tex. Crim. App. 2015). On the contrary, *Price* says that it is a "result of conduct" offense. *Id.* at 439, 443.

19

if that allegation gives rise to a variance, a variance is reversible only if the variance prejudices the defendant's "substantial rights." *Santana v. State*, 59 S.W.3d 187, 195 (Tex. Crim. App. 2001) (quoting *Gollihar*, 46 S.W.3d at 257). Prejudice to the defendant's substantial rights turns in part on notice to the defendant: "whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Id.* (quoting *Gollihar*, 46 S.W.3d at 257); *accord Ramos*, 407 S.W.3d at 270–71. But when the defendant's trial strategy is to deny having touched the complainant at all during the unique events of an alleged bodily-injury assault, there is no notice problem stemming from a variance between alternative methods of committing the assault. *See Hernandez*, 556 S.W.3d at 328 (op. on reh'g) (concluding that defendant suffered no violation of "right to notice" for inability "to prepare a meaningful defense" because defendant "categorically denied that he ever put his hands on [complainant's] neck or that he poured water down her throat" while alleged material variance stemmed from whether defendant "exhibited or used water as a deadly weapon while he strangled" her); *Ramos*, 407 S.W.3d at 271 ("[N]otwithstanding any variance in pleading and proof regarding the precise method by which Appellant caused the death of the victim, Appellant was still put on notice regarding the specific offense of manslaughter because Appellant was charged with murder, and the events surrounding the event were unique."). Here, both McCall and his father said that McCall never put his hands on Sanchez and thus could not possibly have caused her any injury during the unique events outside the home on the night that they all returned from dinner and that McCall and Sanchez's relationship ended. As a result, the indictment's allegation about Sanchez's "normal breathing or circulation of the blood" having been "imped[ed]" does not give rise to a reversible material variance because

20

"there is no reason to believe that" McCall "would have suddenly shifted course and admitted to" injuring Sanchez but not in a way that impeded her breathing or circulation. *See Hernandez*, 556 S.W.3d at 328 (op. on reh'g).[4] Alternatively, even if the State did need to prove that Sanchez's breathing or circulation of the blood had been impeded, the evidence sufficed to prove that too. Sanchez testified that McCall's actions, including choking her and squeezing her throat with a hand so large that it covered her entire throat, caused "[e]verything" to go "black" for her and stopped her breathing for a time. *See Marshall*, 479 S.W.3d at 845 (evidence may suffice to prove impeded breath even when defendant "does not necessarily prevent breathing altogether"). And Dr. Strelnieks testified that she reported lost consciousness due to McCall's actions.

Fourth, the evidence of impeded breath or circulation leads us to McCall's argument that the jury's not guilty and guilty verdicts required the particular injury that the State needed to prove to be one that did *not* include impeding Sanchez's breathing or circulation of the blood. This is a complaint about "inconsistent verdicts." *See, e.g.*, *Hernandez*, 556 S.W.3d at 331 (op. on reh'g). When measuring the sufficiency of the evidence, each count must stand or fall on its own, and when analyzing the sufficiency of the evidence of a particular conviction, we consider *all* of the evidence admitted at trial under the *Jackson* standard. *Id.* If a defendant is acquitted of one count and convicted of another based on the same evidence in a single trial, the defendant cannot rely on the inconsistent verdicts to attack the conviction. *Id.* We do not speculate about why a jury returned the verdicts that it did. *Id.* at 321. When a multi-count verdict appears inconsistent, our inquiry is limited to determining whether the evidence is legally sufficient to

---

[4] To the extent that McCall's notice argument attacks the submission of the lesser included offense, there is no notice problem here because proof of misdemeanor assault by causing bodily injury was necessarily included within what the indictment alleged. *See Guzman v. State*, 552 S.W.3d 936, 947–49 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

21

support the count on which a conviction is returned. *Id.* So long as the evidence supports McCall's conviction for misdemeanor assault by causing bodily injury—which it does—we must uphold the conviction. *See id.* This is why we may rely on the evidence of Sanchez's breathing or circulation's having been impeded despite the acquittal on felony assault. *See, e.g.*, *Jackson v. State*, 3 S.W.3d 58, 61–62 (Tex. App.—Dallas 1999, no pet.) (rejecting argument that court could not consider evidence of entry when reviewing sufficiency of evidence to support conviction for lesser included offense of criminal trespass despite defendant's acquittal in same trial on greater offense of burglary).

In sum, we hold that the evidence was sufficient to support the jury's verdict that McCall was guilty of the Class A misdemeanor of assault by causing bodily injury under Section 22.01(a)(1). We also hold that there was no reversible material variance. We overrule McCall's second and third issues.

## III. The instruction for the misdemeanor offense did not constitute an improper comment on the weight of the evidence.

In his fourth issue, McCall contends that "[t]he assault jury charge contained an improper comment on the weight of the evidence." He points to how the charge conditioned the jury's consideration of the misdemeanor offense on only "reasonable doubt as to element 5, above," which was the element for the felony offense about impeded breath or circulation of the blood. This instruction, he argues, failed to address element 4 of the felony offense, which was the element about applying pressure to Sanchez's throat or neck or blocking her nose or mouth. By conditioning consideration of the misdemeanor offense on only reasonable doubt on element 5, McCall argues, the trial court "unfairly focused the jury's attention on [element 4] and likely caused the jurors to assume that the evidence was sufficient to meet the [S]tate's burden on" element 4.

22

This is a claim of charge error, so we review it under the two-step framework—first reviewing for error and if there is, then reviewing for harm—laid out above. *See, e.g.*, *Nguyen v. State*, 506 S.W.3d 69, 83 (Tex. App.—Texarkana 2016, pet. ref'd); *Brock v. State*, 495 S.W.3d 1, 13–15 (Tex. App.—Waco 2016, pet. ref'd); *Cardon v. State*, 436 S.W.3d 860, 863-65 (Tex. App.—Amarillo 2014, no pet.). The trial court should give the jury a written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." Tex. Code Crim. Proc. art. 36.14; *Celis v. State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013). A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986). Similarly, an instruction that focuses the jury's attention on a specific type of evidence that may support a finding of an element of an offense also constitutes an improper comment. *Kirsch*, 357 S.W.3d at 651. To determine an instruction's meaning and effect, and thus whether it is a comment on the weight of the evidence, we consider the charge as a whole. *Hernandez v. State*, 340 S.W.3d 55, 60 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Delapaz v. State*, 228 S.W.3d 183, 212 (Tex. App.—Dallas 2007, pet. ref'd); *see Russell v. State*, 749 S.W.2d 77, 79–80 (Tex. Crim. App. 1988). Absent evidence to the contrary, we assume that the jury followed the trial court's understandable written instructions. *Elizondo v. State*, 487 S.W.3d 185, 208 (Tex. Crim. App. 2016).

As a whole, the charge's application paragraphs for the felony and misdemeanor offenses listed elements and instructed that the State needed to prove each element beyond a reasonable doubt. For the felony offense, it instructed the jury:

> To prove that the defendant is guilty of Assault Family Violence—Strangulation, the [S]tate must prove, beyond a reasonable doubt, five elements. The elements are that—
>
> . . . .
>
> If you all agree the [S]tate has failed to prove, beyond a reasonable doubt, one or more of elements 1, 2, 3, 4, or 5 listed above, you must find the defendant "not guilty."
>
> If you all agree the [S]tate has proved, beyond a reasonable doubt, each of the five elements listed above, you must find the defendant "guilty" of Assault Family Violence—Strangulation as alleged in the indictment.

Then, for the misdemeanor offense, the charge included the instruction about which McCall complains and added similar instructions for that offense's elements—that the State needed to prove each of them beyond a reasonable doubt:

> If you have a reasonable doubt as to element 5, above, . . . then you will consider whether the State has proven the defendant guilty of the lesser-included offense of Assault – Bodily Injury Family Violence.
>
> To prove that the defendant is guilty of the lesser included offense of Assault- Bodily Injury Family Violence, the State must prove beyond a reasonable doubt 4 elements. The elements are that—
>
> . . . .
>
> If you all agree the [S]tate has failed to prove, beyond a reasonable doubt, one or more of elements 1, 2, 3, and 4 listed above, you must find the defendant "not guilty."
>
> If you all agree the [S]tate has proved, beyond a reasonable doubt, all of the four elements listed above, you must find the defendant "guilty."

Considering all these instructions as a whole, we see no improper comment in the complained-of instruction. McCall posits that the instruction caused the jurors to assume that element 4 was proven beyond a reasonable doubt when they did not otherwise believe that to be so. For if they *did* believe it to have been proven beyond a reasonable doubt before reaching the complained-of

24

instruction, then the instruction had no improper effect on them. But if they did not believe element 4 to have been proven beyond a reasonable doubt by that point, they would not have reached the misdemeanor offense at all—because of the instruction itself. It, in context, directed the jury to consider the misdemeanor offense only if they had a reasonable doubt under element 5. The instructions as a whole were understandable, so we assume that the jury followed them, and McCall offers no evidence to the contrary. *See Elizondo*, 487 S.W.3d at 208.

We thus hold that the complained-of instruction did not constitute an improper comment on the weight of the evidence. *See Celis*, 416 S.W.3d at 433; *Kirsch*, 357 S.W.3d at 651; *Whaley*, 717 S.W.2d at 32; *see also Nguyen*, 506 S.W.3d at 83 (holding that submission of element of offense did not constitute improper comment because it did not imply approval of State's arguments because nearby instruction required jury to find that element proven beyond a reasonable doubt before finding defendant guilty); *Hanson v. State*, 180 S.W.3d 726, 728–29 (Tex. App.—Waco 2005, no pet.) (holding that instructions' use of "alleged victim" did not constitute improper comment because although using "victim" alone would be improper, adding "alleged" meant that "the court's instruction did not assume that the complainant was *in fact* a victim" and thus that instruction did not "assume[] the truth of a controverted issue" (quoting *Whaley*, 717 S.W.2d at 32)). We overrule McCall's fourth issue.

**CONCLUSION**

We affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   January 8, 2021

Do Not Publish

26