**Opinion filed May 16, 2024**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-23-00015-CR
_____

## HUMBERTO POLANCO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-21-0298-CR**

### O P I N I O N

In this appeal, we address the Fifth Amendment's prohibition against double jeopardy and how, in this context, multiple offenses may be submitted to the jury. Appellant, Humberto Polanco, was convicted of murder, failure to stop and render aid resulting in the death of a person,[1] and tampering with physical evidence.

---

[1]Prior to September of 2023, Section 550.021 of the Transportation Code was entitled "Accident Involving Personal Injury or Death," but in this opinion we will refer to the offense as "failure to stop and render aid." *See, e.g.*, *Curry v. State*, 622 S.W.3d 302, 308 (Tex. Crim. App. 2019).

*See* TEX. PENAL CODE ANN. §§ 19.02(b)(1)–(2), 37.09(a)(1) (West Supp. 2023); TEX. TRANSP. CODE ANN. §§ 550.021, 550.023 (West Supp. 2023). After Appellant pled "true" to the State's enhancement allegation, the jury found the enhancement to be "true" and assessed Appellant's punishment at imprisonment for life in the Institutional Division of the Texas Department of Criminal Justice for the murder and failure to stop and render aid convictions, and twenty years' imprisonment for the tampering conviction. The jury further assessed a $10,000 fine for each offense. The trial court sentenced Appellant accordingly and ordered that the sentences be served concurrently.

In three issues on appeal, Appellant contends that: (1) his convictions for murder and failure to stop and render aid violate the Double Jeopardy Clause of the Fifth Amendment; (2) the trial court erred when it charged the jury on both the murder and failure to stop and render aid offenses because this allowed the jury to convict Appellant of both offenses in violation of the Double Jeopardy Clause; and (3) the trial court erred when it imposed a $10,000 fine for each conviction without first inquiring on the record as to whether Appellant had the financial ability to immediately pay these fines, as required by Article 42.15(a-1) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 42.15(a-1) (West Supp. 2023). We affirm.

I. *Factual Background*

Appellant does not challenge the sufficiency of the evidence to support his convictions. Therefore, we only recite the facts that are necessary to address the issues that he has raised on appeal.

Maria Carrasco was approaching an intersection in Odessa around 9:30 p.m. when she saw Appellant's black Chevrolet Tahoe advancing directly toward her. Carrasco also saw Veronica Carrillo—Appellant's girlfriend of nearly two years— walking along the side of the roadway. After Appellant's Tahoe crossed the center

2

line into oncoming traffic, it struck Carrillo; Appellant then reentered his lane of travel and fled. Based on what she observed, Carrasco believed that Appellant intentionally struck Carrillo with his Tahoe and then fled. Carrasco stopped and called 9-1-1; she also checked on Carrillo, who was still breathing, but was "really mangled." When Deputy Cory Wester with the Ector County Sheriff's Office arrived at the scene, Carrillo was lying in the roadway, had no pulse, and was no longer breathing.

After Appellant's Tahoe struck Carrillo, he drove it to a local bar where he became too intoxicated to drive home. Appellant's mother drove him home in the Tahoe but, at Appellant's direction, stopped at a car wash on the way. The following morning, Appellant was arrested for the murder of Carrillo; he was also charged with failure to stop and render aid resulting in death and tampering with physical evidence because his Tahoe was washed after he struck Carrillo with it.

## II. *Double Jeopardy*

In his first issue, Appellant contends for the first time on appeal that his convictions for murder and failure to stop and render aid resulting in the death of a person violate the constitutional prohibition against double jeopardy because he was subjected to multiple punishments for the same offense.

### A. *Preservation of Complaint*

To preserve a multiple punishments double jeopardy complaint for appellate review, it is generally required that a defendant assert the necessary objections when, or before, the trial court's charge is submitted to the jury. *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000). However, because double jeopardy concerns affect fundamental, constitutional rights, they may be raised for the first time on appeal if: (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record; and (2) the enforcement of the usual rules

of procedural default serve no legitimate state interests. *Sledge v. State*, 666 S.W.3d 592, 599 (Tex. Crim. App. 2023) (citing *Gonzalez*, 8 S.W.3d at 643).

Because Appellant did not assert a double jeopardy objection in the trial court below, we must determine whether a double jeopardy violation is apparent on the face of the record. *See id.*; *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014); *see also Stinecipher v. State*, 438 S.W.3d 155, 159 (Tex. App.—Tyler 2014, no pet.).

B. *Applicable Law*

The Fifth Amendment's Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST. AMEND. V. Simply put, a person may not be prosecuted twice for the same offense. Hence, the guarantee against double jeopardy affords the accused three distinct protections against: (1) a second prosecution for the "same" offense after an acquittal; (2) a second prosecution for the "same" offense after a conviction; and (3) multiple punishments for the "same" offense. *Nawaz v. State*, 663 S.W.3d 739, 743 (Tex. Crim. App. 2022). The protection against multiple punishments for the "same" offense is the double jeopardy issue that we must address in this appeal. *See id.*

"A multiple-punishments double-jeopardy violation may arise either in the context of lesser-included offenses (when the same conduct is punished under both a greater and a lesser-included statutory offense) or when the same criminal act is punished under two distinct statutory provisions, but the legislature intended only [for] one punishment [to apply]." *Aekins v. State*, 447 S.W.3d 270, 274 (Tex. Crim. App. 2014). To determine "whether the double-jeopardy protection against multiple punishments for the same offense has been infringed, courts must seek to understand how many punishments the law permits." *Nawaz*, 663 S.W.3d at 743. As such, we must ascertain what the legislature has prescribed with respect to how many times

4

an offender may be punished. *Id.*; *see Ex parte Benson*, 459 S.W.3d 67, 71 & n.8 (Tex. Crim. App. 2015) (in the multiple punishments context, the state legislature may prescribe how many times an offender may be punished) (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983)). Whether the legislature intended to authorize separate punishments is measured in two ways: (1) by analyzing the elements of the charged offenses; and (2) by identifying the appropriate "unit of prosecution" for the offenses. *Garfias*, 424 S.W.3d at 58. "When two distinct statutory provisions are at issue, the offenses must be considered the same under both an 'elements' analysis and a 'units' analysis for a double-jeopardy violation to occur." *Benson*, 459 S.W.3d at 71.

The *Blockburger* test is "[t]he traditional starting point for determining 'sameness'" in the multiple punishments double jeopardy analysis. *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "Under *Blockburger*, two separately defined statutory offenses are presumed *not* to be the same so long as each requires proof of an elemental fact that the other does not." *Id.* In comparing the elements of different statutory provisions, we examine not only "the statutory elements in the abstract but we also compare the offenses as pleaded, to determine whether the pleadings have alleged the same 'facts required.'" *Shelby v. State*, 448 S.W.3d 431, 436 (Tex. Crim. App. 2014) (quoting *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008)). "[I]n Texas, when resolving whether two crimes are the same for double-jeopardy purposes, we focus on the elements alleged in the charging instrument." *Bigon*, 252 S.W.3d at 370.

In combining the "cognate-pleadings approach" with the *Blockburger* "same-elements" test, we must ask whether each offense, as pled in the charging instrument, contains at least one element that the other does not. *Nawaz*, 663 S.W.3d at 744 (quoting *Benson*, 459 S.W.3d at 72). If not, we presume that the two offenses are

the same for multiple punishment double jeopardy purposes. *Id.* However, if each offense *does* contain an element that the other does not, it is then presumed that the offenses are *different*, and we must determine whether other considerations may operate to defeat that presumption. *Id.* (citing *Benson*, 459 S.W.3d at 72–73); *Ervin v. State*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999). In this regard, we look only to the pleadings and the relevant statutory provisions in conducting this analysis, rather than the evidence presented at trial. *Id.*

"In deciding whether the presumption has been rebutted, we must conduct an analysis of various factors under *Ervin* to determine whether the legislature nevertheless clearly intended [for] the offenses to be treated as the same." *See Benson*, 459 S.W.3d at 73, 76; *see also Garfias*, 424 S.W.3d at 58–59 (citing *Ervin*, 991 S.W.2d at 814). The Court of Criminal Appeals in *Ervin* set forth the following non-exclusive factors that are designed to assist the courts in their analysis of whether, in the absence of clear legislative guidance, the legislature intended to allow the same conduct to be punished twice under different statutes:

> (1) whether offenses are in the same statutory section or chapter; (2) whether the offenses are phrased in the alternative; (3) whether the offenses are named similarly; (4) whether the offenses have common punishment ranges; (5) whether the offenses have a common focus or gravamen; (6) whether the common focus tends to indicate a single instance of conduct; (7) whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger* (a liberalized *Blockburger* standard); and (8) whether there is legislative history that contains an articulation of an intent to treat the offenses as the same or differently for double-jeopardy purposes.

*Benson*, 459 S.W.3d at 72–73 (citing *Ervin*, 991 S.W.2d at 814); *Shelby*, 448 S.W.3d at 436 (quoting *Garfias*, 424 S.W.3d at 59).

6

C. *No Double Jeopardy Violation*

The indictment in this case alleges that Appellant committed the offense of murder by: (1) intentionally or knowingly causing Carrillo's death by striking her with a motor vehicle; or (2) intentionally or knowingly committing an act clearly dangerous to human life—striking her with a motor vehicle—which caused her death. In the second count of the indictment, the State alleged that Appellant committed the offense of failure to stop and render by intentionally or knowingly driving a vehicle that was involved in an accident that resulted in Carrillo's death, and, knowing that the accident had occurred, he left the scene without providing necessary information or rendering reasonable assistance to Carrillo.

1. *The* Blockburger *"Cognate-Pleadings" Test*

The two statutory provisions under which Appellant was charged and convicted are found in different sections of entirely separate statutes—the Penal Code and the Transportation Code. *See* PENAL § 19.02(b)(1)–(2); TRANSP. § 550.021(c)(1)(A). To convict Appellant of murder as charged in this case, the State was required to prove beyond a reasonable doubt that Appellant: (1) intentionally or knowingly caused the death of Carrillo; or (2) intentionally or knowingly committed an act clearly dangerous to human life that caused Carrillo's death. *See* PENAL § 19.02(b)(1)–(2). Texas courts have long recognized that, for murder, the gravamen of the offense is the death of a person. *See, e.g.*, *Ramos v. State*, 407 S.W.3d 265, 270 (Tex. Crim. App. 2013).

To convict Appellant of failure to stop and render aid resulting in the death of Carrillo as charged in this case, the State was required to prove beyond a reasonable doubt that Appellant: (1) was the operator of a motor vehicle; (2) had knowledge that he was involved in an accident; (3) knew that the accident was reasonably likely to result in Carrillo's death; and (4) failed to immediately stop or return to the scene of the accident, determine whether Carrillo required aid, and remain at the scene to

7

comply with the requirements of Section 550.023. *See Boudreaux v. State*, 631 S.W.3d 319, 327 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd).

Here, to convict Appellant of murder as charged in the indictment, the State was *not* required to prove that Appellant, knowing that an accident occurred, left the scene of the accident without providing the required information, and failed to render reasonable assistance to anyone who was/were reasonably likely to have been injured or killed as a result of the accident. *See Curry v. State*, 622 S.W.3d 302, 308–10 (Tex. Crim. App. 2019); *Boudreaux*, 631 S.W.3d at 327. Moreover, to convict Appellant of failure to stop and render aid as charged in the indictment, there was no requirement that the State prove that Appellant intentionally or knowingly struck Carrillo with his motor vehicle, which caused Carrillo's death. *See Powell v. State*, 114 S.W.2d 894, 896 (Tex. Crim. App. 1938) ("A person may, by accident and without any fault on his part, injure or kill another, and might not be guilty of murder, but, if he failed to stop and render all necessary aid, he would be guilty of failing to stop and render aid."). Therefore, these offenses—murder and failure to stop and render aid—required proof of an element that the other did not. *See id.*; *Lopez v. State*, No. 11-10-00255-CR, 2012 WL 3129160, at *1–2 (Tex. App.—Eastland Aug. 2, 2012, pet. ref'd) (mem. op., not designated for publication). These are significant distinctions. As such, the offenses for which Appellant was convicted in this case—murder and failure to stop and render aid—are different under *Blockburger*'s cognate-pleadings approach, which creates a presumption that it is permissible to assess multiple punishments for these separate offenses. *Benson*, 459 S.W.3d at 72.

2. *The* Ervin *Factors*

We next examine the *Ervin* factors to determine whether the presumption of allowing multiple punishments has otherwise been rebutted. *Id.*

As explained above, murder and failure to stop and render aid resulting in the death of a person are not found in the same section or chapter of the Penal Code—they are found in different codes altogether.  PENAL § 19.02(b); TRANSP. § 550.021(c)(1)(A).  "The Legislature knows well enough how to plainly express its intention that an accused should suffer multiple punishments" for certain offenses or the same criminal transaction.  *Littrell v. State*, 271 S.W.3d 273, 278 (Tex. Crim. App. 2008).  One of the manners in which they do so is by criminalizing distinct offenses in separate statutory provisions.  *See Gonzales v. State*, 304 S.W.3d 838, 847 (Tex. Crim. App. 2010).

Correspondingly, the Penal Code and the Transportation Code advance different purposes.  One of "[t]he general purposes" of the Penal Code is "to establish a system of prohibitions, penalties, and correctional measures to deal with conduct that unjustifiably and inexcusably causes or threatens harm to those individual or public interests for which state protection is appropriate."  PENAL § 1.02 (West 2021).  The provisions of the Penal Code, and their enforcement, are primarily intended to ensure public safety through: (1) the deterrent influence of penalties; (2) the rehabilitation of those convicted of Penal Code violations; and (3) such punishment as may be necessary to prevent the likely recurrence of criminal behavior.  *Id.* § 1.02(1)(A)–(C).

Conversely, the provision that criminalizes a person's failure to stop and render aid is found in Title Seven, Subtitle C of the Transportation Code—the "Rules of the Road."  TRANSP. § 550.021.  Chapter 550, which is entitled "Accidents and Accident Reports,"[2] demonstrates that its purpose is to define traffic and

---

[2]Effective September 1, 2023, the Transportation Code was amended to, among other things, change the term "accident" and all references thereto to "collision."  Acts 2023, 88th Leg., ch. 709 (H.B. 2190), § 1-108, eff. Sept. 1, 2023.  Chapter 550 is now entitled "Collisions and Collision Reports."  *See id.* The changes made in the Transportation Code are "nonsubstantive and are intended to clarify rather than change existing law."  *Id.*

transportation rules and regulations for operators of motor vehicles—i.e., the provisions of this code consist primarily of civil and administrative statutes rather than punitive ones. *See, e.g.*, *City of Richardson v. Bowman*, 555 S.W.3d 670, 688–89 (Tex. App.—Dallas 2018, pet. denied); *Ex parte Campos*, 936 S.W.2d 23, 24 (Tex. App.—San Antonio 1996, pet. ref'd). Therefore, this factor weighs against treating these offenses—murder and failure to stop and render aid—as the same for double jeopardy purposes. *Benson*, 459 S.W.3d at 78–79.

Moreover, failure to stop and render aid—which was entitled "Accident Involving Personal Injury or Death" prior to the 2023 legislative amendments[3]—and murder share no common terms in their respective titles and do not have the same or similar punishment ranges. *See* PENAL § 19.02(b)–(c); TRANSP. § 550.021(c)(1)(A); *Shelby*, 448 S.W.3d at 438. Murder is a first-degree felony which carries a punishment range of no less than five years but no more than ninety-nine years imprisonment, or imprisonment for life. *See* PENAL § 12.32 (West 2019), § 19.02(c). Failure to stop and render aid involving an accident that results in the victim's death is a second-degree felony which carries a punishment range of no less than two years but no more than twenty years' imprisonment. *See id.* § 12.33; TRANSP. § 550.021. Thus, in sum, the combination of the first four *Ervin* factors weighs against treating these offenses as the same for double jeopardy purposes.[4] *See Garfias*, 424 S.W.3d at 61.

The fifth *Ervin* factor, which requires that we examine the "focus" or "gravamen" of a penal provision, is "the best indicator of legislative intent when determining whether a multiple-punishments violation has occurred." *Shelby*, 448

---

[3]Section 550.021 is currently entitled "Collision Involving Personal Injury or Death." *See* Acts 2023, 88th Leg., ch. 709 (H.B. 2190), § 45, eff. Sept. 1, 2023.

[4]The second *Ervin* factor, which addresses whether the two statutes under review are phrased in the alternative, is inapplicable when, as here, the two statutes in question are found in different statutory sections. *Shelby*, 448 S.W.3d at 438.

S.W.3d at 436. The sixth *Ervin* factor necessarily requires that we consider the allowable unit of prosecution for the charged offenses when we conduct an "elements" analysis. *Id.*; *see also Ex parte Castillo*, 469 S.W.3d 165, 169 (Tex. Crim. App. 2015) ("The allowable unit of prosecution of an offense turns on statutory construction and usually requires ascertaining the gravamen, or gravamina, or the offense."). In this context, "when examining a statute to determine 'the focus or gravamen' of the offense for double-jeopardy purposes," existing precedent that has construed the controlling statute for other purposes guides our analysis. *Nawaz*, 663 S.W.3d at 746.

Failure to stop and render aid is a "circumstances surrounding the conduct" offense; the "circumstances" are the occurrence of an accident and that the accident resulted in or was reasonably likely to result in either injury to or the death of another person. *See* TRANSP. § 550.021(a); *Curry*, 622 S.W.3d at 308–10; *see also Huffman v. State*, 267 S.W.3d 902, 908 (Tex. Crim. App. 2008), *superseded by statute*. Thus, the gravamen of a failure to stop and render aid offense "is leaving the scene of an accident," and "the prescribed unit of prosecution is 'each victim, each accident.'" *Huffman*, 267 S.W.3d at 908; *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003).

By contrast, murder is a "result-of-conduct" offense, the gravamen of which is the death of the victim. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022); *Ramos*, 407 S.W.3d at 270. Murder is defined in terms of one's objective to produce, or a substantial certainty of producing, a specified result: the death of a person. *Louis v. State*, 393 S.W.3d 246, 251 (Tex. Crim. App. 2012). Consequently, under both the *Blockburger* test and considering the *Ervin* factors, we conclude that murder and failure to stop and render aid resulting in the death of a person are *not* the "same" offense for double jeopardy purposes. Therefore, the jury in this case could have permissibly convicted Appellant of both offenses as charged in the

11

indictment without violating the Double Jeopardy Clause's prohibition against multiple punishments for the "same" offense. *See Langs v. State*, 183 S.W.3d 680, 688 (Tex. Crim. App. 2006).

That there is no double jeopardy violation is clearly apparent on the face of the record. *See id.* at 689; *Powell*, 114 S.W.2d at 896 ("The killing of a person by driving an automobile upon or over him is one offense; failing to stop and render aid is quite a different offense."). Accordingly, we overrule Appellant's first issue.

III. *Convictions for Murder and Failure to Stop and Render Aid*

In his third issue, Appellant argues that the trial court erroneously charged the jury when it submitted both the murder and the failure to stop and render aid offenses.

A. *Standard of Review*

Reviewing claims of charge error is a two-step process. *Campbell*, 664 S.W.3d at 245 (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). First, we must determine whether error exists. *Id.* Second, if there is error, we must decide whether the appellant was harmed and if the harm is sufficient to warrant reversal. *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd). The applicable standard of review to be utilized for charge error depends on whether the claimed error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020).

The purpose of the trial court's charge "is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021)

(quoting CRIM. PROC. art. 36.14) (West 2007). Because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). Therefore, when the charge is inaccurate, the trial court errs, and the error is subject to the appropriate harm analysis. *See Bell*, 635 S.W.3d at 645.

B. *No Charge Error*

In his brief, Appellant states the dictionary definition of "accident" and emphatically asserts that "there is no case law on this question because it is simply illogical" to convict a person of "an intentional act of murder and an unintentional accident." Contrary to Appellant's assertion, there is indeed precedent on this question.

The Court of Criminal Appeals addressed this argument as early as 1938, when it held that murdering a person by intentionally "driving an automobile upon or over him" is "quite a different offense" from "failing to stop and render aid." *Powell*, 114 S.W.2d at 896. More recently, we have also reiterated that murder and failure to stop and render aid resulting in the death of the victim are separate and distinct offenses. *Lopez*, 2012 WL 3129160, at *1–2; *see also Stinecipher*, 438 S.W.3d at 161–62 (concluding that failure to stop and render aid resulting in the death of the victim and criminally negligent homicide were not the same offense for double jeopardy purposes). We reaffirm that distinction today.

In *Lopez*, we explained:

> The murder was complete when appellant intentionally or knowingly ran over the victim. After running over the victim and, thus, being involved in an "accident," appellant then left the scene and thereby committed the [separate] offense of failure to stop and render aid. As such, the trial court did not err in failing to instruct the jury that it could not convict appellant of both offenses.

2012 WL 3129160, at *2. We also clarified that the term "accident" does not refer to the applicable culpable mental state with respect to the other person's resulting injury or death. *Id.* at *1; *see also Curry*, 622 S.W.3d at 308–10; *Mayer v. State*, 494 S.W.3d 844, 849 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Rather, the applicable culpable mental state "is established by showing that the accused had knowledge of the circumstances surrounding his conduct, meaning the defendant had knowledge that an accident [had] occurred, and the accident was reasonably likely to result in injury or death of a person." *Boudreaux*, 631 S.W.3d at 327–28 (citing *Curry*, 622 S.W.3d at 308–10). Further, we have observed that:

> Absurd results would follow if we were to agree with [A]ppellant's contention: the operator of a vehicle could intentionally . . . run over a person and then leave the scene without being guilty of failing to stop and give information or render aid because there would be no "accident," whereas under the same scenario except that the collision is unintentional, the operator would be guilty.

*Lopez*, 2012 WL 3129160, at *1. Such is the case here.

We conclude that the term "accident" or "collision" as used in Sections 550.021 and 550.023 includes a situation where the operator of a motor vehicle knowingly or intentionally strikes or runs over another person. *See id.* The trial court, therefore, did not err when it charged and instructed the jury on both offenses. As such, the jury's guilty verdicts are not irreconcilable. Because no charge error exists, Appellant's third issue is overruled.

## IV. *The Ability-To-Pay Inquiry*

Appellant contends in his second issue that the trial court erred when it failed to inquire on the record, before pronouncing Appellant's sentences, as to Appellant's ability to pay the $10,000 fines assessed by the jury. Appellant does not contest the imposition of the fines themselves, nor the veracity of the notation in the judgment that the trial court ordered that the fines be assessed "[a]fter having conducted an inquiry into [Appellant's] ability to pay."

Article 42.15(a-1) of the Code of Criminal Procedure reads, in pertinent part:

> Notwithstanding any other provision of this article, during or immediately after imposing a sentence in a case . . . a court shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs.

CRIM. PROC. art. 42.15(a-1) (West Supp. 2023). Appellant argues that the phrase "on the record," which was added by the legislature and became effective September 1, 2021, constitutes "an absolute requirement." The State responds that a defendant's right to an ability-to-pay inquiry on the record is a category-three *Marin* right, and that Appellant failed to preserve this issue for our review because he did not object to this oversight in the trial court. *See Marin v. State*, 851 S.W.2d 275, 278–80 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).

In support of his argument, Appellant cites to *Cruz v. State*, No. 14-21-00454-CR, 2023 WL 3236888, at *2–4 (Tex. App.—Houston [14th Dist.] May 4, 2023, pet. granted). In *Cruz*, the Fourteenth Court of Appeals held that the "right to an ability-to-pay inquiry is a category-two *Marin* right," and an appellant is "not required to preserve this complaint for appeal through objection." *Id.* at *4. The court in *Cruz* concluded that Article 42.15(a-1) "creates a duty on the trial court to act sua sponte and hold an ability-to-pay inquiry when a fine or costs are imposed on a defendant in the judgment." *Id.* Relying on *Cruz*, Appellant requests that we remand this issue to the trial court so that it may conduct the proper inquiry on the record.

However, even if we were to assume that the trial court abused its discretion as Appellant suggests, and we do not so conclude, abating this appeal and remanding this cause to the trial court for such an inquiry would only be appropriate if (1) the trial court's alleged erroneous action, failure, or refusal to act prevented Appellant from properly presenting the case to this court, and (2) the trial court is able to correct its action or failure to act. TEX. R. APP. P. 44.4(a); *see Sloan v. State*, 676 S.W.3d

15

240, 241–42 (Tex. App.—Tyler 2023, no pet.). "This rule allows for the creation of a new record on remand in certain situations." *Sloan*, 676 S.W.3d at 241 (citing *LaPointe v. State*, 225 S.W.3d 513, 522 (Tex. Crim. App. 2007)) ("When a trial court erroneously has withheld information necessary to evaluate a defendant's claim on appeal, e.g., [the] failure to file required findings of fact, or has prevented the defendant from submitting information necessary to evaluate his claim, e.g., [such as] refusing to permit an offer of proof, the appellate court is directed to step in and order the trial court to correct the situation.").

Here, Appellant's sole contention on appeal is that an ability-to-pay inquiry did not occur *on the record*. Appellant does not allege, for instance, that the trial court's failure to strictly comply with the spirit of Article 42.15(a-1) prevented him from raising and developing a claim on appeal. *See id.* at 242. Indeed, even in light of the trial court's failure in this case to conduct the "on-the-record" inquiry as mandated by Article 42.15(a-1), the result of such an inquiry, even if it had occurred, is already apparent from the record. *Id.* Specifically, the trial court's judgments recite that "[u]pon release from confinement, the Court ORDERS Defendant to proceed without unnecessary delay to the District Clerk's office, or any other office designated by the Court or the Court's designee, to pay or to make arrangements to pay any fines, court costs, reimbursement fees, and restitution due." Further, Appellant makes no mention of the remaining portion of Article 42.15(a-1), which states, in pertinent part: "If the court determines that the defendant does not have sufficient resources or income to immediately pay all or part of the fine[s] and costs, the court shall determine whether the fine and costs should be . . . required to be paid at some later date." *See* CRIM. PROC. art. 42.15(a-1)(1).

Consistent with Article 42.15(a-1)(1), the trial court ordered Appellant to pay the fines assessed *after* his release from imprisonment, rather than immediately. Therefore, it is apparent from the record that, despite the trial court's failure to

"inquire on the record" about Appellant's ability to *immediately* pay these fines, it is reasonable to conclude that the trial court must have determined that Appellant did not have sufficient resources or income to *immediately* pay all or part of them. *See Sloan*, 676 S.W.3d at 242 (citing CRIM. PROC. art. 42.15(a-1)(1)).

Because Appellant has not argued that the trial court's *determination* amounted to an abuse of discretion, we conclude that remanding this cause to the trial court merely for the purpose of performing a gratuitous "ability-to-pay" inquiry when the resultant determination already appears on the face of the record before us is unnecessary and would constitute waste of judicial resources.[5] *See id.* Accordingly, Appellant's second issue is overruled.[6]

---

[5]Several of our sister courts have also recently addressed this issue, and each court has reached the same result that we do today: that remanding this cause to the trial court for a mere gratuitous "ability-to-pay" inquiry when the resultant determination is already apparent from the record would amount to an unnecessary exercise and a waste of judicial resources. *See, e.g.*, *Mayo v. State*, No. 07-23-00243-CR, 2024 WL 1469051, at *1 (Tex. App.—Amarillo Apr. 4, 2024, no pet. h.) (op. on reh'g); *Jones v. State*, No. 14-22-00495-CR, 2024 WL 848371, at *6–7 (Tex. App.—Houston [14th Dist.] Feb. 29, 2024, no pet. h.); *Sanders v. State*, No. 05-22-01376-CR, 2024 WL 725529, at *7–9 (Tex. App.—Dallas Feb. 22, 2024, no pet.) (mem. op., not designated for publication); *Stanberry v. State*, No. 07-23-00194-CR, 2024 WL 538835, at *2–3 (Tex. App.—Amarillo Feb. 9, 2024, no pet.) (mem. op., not designated for publication); *Gates v. State*, No. 02-23-00004-CR, 2024 WL 482436, at *6 (Tex. App.—Fort Worth Feb. 8, 2024, no pet.) (mem. op., not designated for publication); *Lopez v. State*, No. 01-22-00047-CR, 2024 WL 86412, at *5 (Tex. App.—Houston [1st Dist.] Jan. 9, 2024, pet. filed) (mem. op., not designated for publication); *Schumann v. State*, No. 12-23-00068-CR, 2023 WL 8659249, at *3–5 (Tex. App.—Tyler Dec. 14, 2023, no pet.) (mem. op., not designated for publication); *Gilmer v. State*, No. 12-23-00054-CV, 2023 WL 8103957, at *4 (Tex. App.—Tyler Nov. 21, 2023, no pet.) (mem. op., not designated for publication); *see also Sloan*, 676 S.W.3d at 242.

[6]Even if Appellant disagrees with the trial court's "pay later" determination, he is not harmed by his failure to raise this argument on appeal. If, upon his release, Appellant is unable to pay the assessed fines and court costs, he may seek relief from the trial court at that time. *See* CRIM. PROC. art. 43.035(a), (c) (If the defendant notifies the trial court that he has difficulty paying the assessed costs in compliance with the trial court's judgment, the trial court shall hold a hearing to determine whether that portion of the judgment imposes an undue hardship on the defendant; and, at the hearing, if it determines that such an undue hardship exists, the trial court shall consider whether the assessed costs should be satisfied through one or more of the methods listed under Article 42.15 (a-1).). Further, the trial court retains jurisdiction over the defendant's case for the purposes of making such a determination. *See id.* art. 43.035(e).

## V. *This Court's Ruling*

We affirm the judgments of the trial court.

W. STACY TROTTER

JUSTICE

May 16, 2024

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.